STATE OF IOWA, Appellant, v. WILLIAM FIELDS.

**National Banks:** RECEIVING DEPOSITS WITH KNOWLEDGE OF INSOL-
VENCY: *Construction of statute.* The provisions of Acts Eight-
eenth General Assembly; chapter 153, sections 1-2, making it a
felony for "any officer" of a bank to receive deposits with knowl-
edge that the bank is insolvent, applies to officers of national, as
well as other banks.

SAME: *Federal relations.* Such act is not void, in so far as it applies
to national bank officers, on the ground that it is an attempt to
control and regulate the business operations of national banks,
and to prescribe a condition upon which deposits may be received.

*Appeal from Buchanan District Court.*—HON. JOHN J.
NEY, Judge.

WEDNESDAY, APRIL 3, 1895.

THE defendant was president of the First National
Bank of Cedar Falls, in this state, and was indicted
for receiving a deposit of money in said bank, when
he knew it was insolvent. There was a demurrer to
the indictment, which was sustained, and the state
appeals.—*Reversed.*

*G. W. Dawson*, attorney of Black Hawk county,
and *E. E. Hasner*, attorney of Buchanan county, for
the state.

*Hemenway & Grundy, Mullan & Pickett*, and *Pow-
ers, Lacy & Brown* for appellee.

ROTHROCK, J.—The indictment is founded on sec-
tions 1, 2, chapter 153, of the Acts of the Eighteenth
General Assembly of this state. Section 1 of said act
is in these words: "That no bank, banking house,
exchange broker, deposit office or firm, company,

corporation, or party engaged in the banking, broker exchange, or deposit business, shall accept or receive on deposit, with or without interest, any moneys, bank bills, or notes, or United States treasury notes or currency, or other notes, bills, or drafts circulating as money or currency, when such bank, banking house, exchange broker or deposit office, firm, or party, is insolvent." Section 2 of the act provides that if any such bank, exchange broker, company, or corporation shall receive or accept on deposit any money when insolvent, any "officer, director, cashier, manager, member, party, or managing party thereof, knowing of such insolvency, who shall knowingly receive, or accept, be accessory or permit or connive at the receiving or accepting on deposit therein or thereby, any such deposits as aforesaid, shall be guilty of a felony." The punishment, upon conviction, is imprisonment in the penitentiary for a term not exceeding ten years,

It is not necessary to set out the demurrer to the indictment. There are really but two questions presented for our consideration. One is that the statute under which the indictment was found is not applicable to officers of national banks. There is nothing in the act authorizing the conclusion that any banking institution is excluded from its operation. On the contrary, by its language it includes all banks, whether organized under the laws of the state or the acts of congress.

II. The real question in the case is whether the statute above cited is an attempt to control and regulate the business operations of a national bank. It is contended in behalf of appellee that the state has no power to punish an officer of a national bank for receiving deposits when he knows that the bank is insolvent, because it is a direct interference, and an attempt to prescribe a condition upon which deposits may not be received. It is conceded

that there is no act of congress prohibiting the receipt of deposits at any time before an insolvent bank is taken out of the control of its officers under the provisions of the federal statute. Under the act of congress of June 3, 1864, and amendments thereto, when a banking association has complied with the law, and received a certificate, it is authorized to commence a banking business under the regulations prescribed in sections 5190–5219 of the Revised Statutes of the United States, inclusive. And the seventh sub-division of section 5136 is in these words: "*Seventh.* To exercise by its board of directors, or duly authorized officers and agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money upon personal security; and by obtaining, issuing and circulating notes according to the provisions of this title." It has been several times held by the Supreme Court of the United States that a state cannot impose a tax upon national banks unless permitted to do so by act of congress. *McCullock v. Maryland,* 4 Wheat. 435; *Brown v. Maryland,* 12 Wheat. 449. And in the case of *Bank v. Dearing,* 91 U. S. 29, it was held that a state had no power to provide a penalty against a national bank for taking usurious interest in excess of that prescribed by act of congress. It is contended by counsel for appellee that the statute under which this indictment was found is a direct interference with the right to receive deposits, and that, within the principle of the cases above cited, an officer of a bank, even though the institution is actually insolvent, cannot be punished under a state enactment for receiving deposits, knowing that his bank is insolvent. The argument,

briefly stated, is that if a state has the power to provide that a national bank shall not receive deposits under one state of circumstances, it has the power to so provide under any other circumstances, as that it shall not take deposits unless it holds in its possession one-half of its deposits and capital as a reserve fund. We think the argument of counsel that the act in question is an attempt to regulate the business of the bank, is not a proper construction of the law.

It is to be remembered that by the demurrer to the indictment the defendant admits that the bank was insolvent when he received the deposit, and that he knew it was insolvent at that time. The acts of congress provide no penalty for the fraudulent receiving of deposits, and the statute under consideration operates upon the person who commits the crime. And it is not a material question to determine whether it will be necessary to investigate the financial condition of the bank, to prove that the bank was insolvent when the deposit was received. This statute is in the nature of a police regulation, having for its object the protection of the public from the fraudulent acts of bank officers. The mere fact that in violating the law of the state the defendant performed an act pertaining to his duty as an officer of the bank, does not in any manner interfere with the proper discharge of any duty he owes to any power, state or federal. Surely, it was not intended by any act of congress that officers of a national bank should be clothed with the power to cheat and defraud its patrons. National banks are organized and their business prosecuted for private gain, and we can conceive of no reason why the officers of such banks should be exempt from the penalties prescribed for fraudulent banking. Suppose that the deposit in this case had been for such an amount that the depositor thought it important to inquire of the president of the bank as to the condition

of the institution as to solvency, and had been answered that it had ample means and a large surplus, and on the faith of such representations the deposit was made, and within a few days thereafter its doors were closed, and such a condition of affairs disclosed as showed that the bank had been for a long time insolvent. What defense could be interposed to an indictment for obtaining money by false pretenses? The claim that the defendant was not liable to indictment and punishment because he was in the performance of a duty under the national banking law would meet with but slight consideration in any court. The supposed case is not in all particulars parallel with the one at bar, but they are, in principle, the same. The only difference is that in the supposed case the affirmative representation of solvency is made, and in the case at bar the open bank, receiving and paying out money, is in effect a representation that it is a solvent institution. The question is important. National banks are located and doing business in every county in the state, and we are aware of no decision of any court, state or federal, which exempts their officers from the penalties which are prescribed by acts like that under consideration. And it surely should require most cogent reasons for the establishment of any such a rule. It would be a premium offered to officers of national banks for dishonest practices. In the case of *National Bank v. Com.*, 9 Wall. 353, it was held that a state had the power to tax the shares of a stockholder in a national bank. It is said in that case, that the doctrine that a a national bank cannot be subjected to a tax on its capital, "has its foundation in the proposition that the right of taxation may be so used in such cases as to destroy the instrumentalities by which the government proposes to effect its lawful purposes in the states, and it certainly cannot be maintained that the banks or

other corporations or instrumentalities of the government, are to be wholly withdrawn from the operation of state legislation. The most important agents of the federal government are its officers; but no one will contend, that when a man becomes an officer of the government he ceases to be subject to the laws of the state. * * * The limitation is, that the agencies of the federal government are only exempted from state legislation so far as that legislation may interfere with, or impair their efficiency in performing the functions by which they are designed to serve that government. Any other rule would convert a principle founded alone in the necessity of securing to the government of the United States the means of exercising its legitimate powers into an unauthorized and unjustifiable invasion of the rights of the states. The salary of a federal officer may not be taxed; he may be exempted from any personal services which interfere with the discharge of his official duties, because those exemptions are essential to enable him to perform those duties; but he is subject to all the laws of the state which affect his family, or social relations, or his property, and he is liable to punishment for crime, though that punishment be imprisonment or death. So of the banks. They are subject to the laws of the state, and are governed in their daily course of business far more by laws of the state than of the nation. * * * It is only when the state law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional." We have made this copious extract from the opinion in the cited case because its reasoning is peculiarly applicable to the question presented by this appeal. How it can be possible that the act punishing bank officers for receiving deposits when they know the bank is insolvent, can be construed as incapacitating the bank from any duty to the government, is more than we can understand. The

act should rather be held to be an aid to the government in maintaining the credit and standing of national banks; being, as it is, a prohibition, under a heavy penalty, for any officer to dishonestly take the money of customers when he knows that the bank is insolvent. The judgment of the district court is REVERSED.