ANNA CASHION v. WESTERN UNION TELEGRAPH COMPANY.

(Decided November 22, 1898).

*Damages—Mental Anguish.*

1. Damages may be recovered of a Telegraph Company for mental anguish occasioned by its negligent failure to promptly deliver a telegram.

2. In the near relations of life, such as husband and wife, parent and child, brothers and sisters, the tender ties of affection usually exist, and mental anguish may be presumed, as a natural consequence of their being injuriously affected through the negligent conduct of another.

3. This presumption will not be made in the more distant relations of life—such as brothers-in-law or friends—the mental anguish in such instances must be matter of proof.

CIVIL ACTION against the defendant for failure to deliver a message, sent by the plaintiff to her brother-in-law, tried before *McIver*, *J.*, and a jury at May Term, 1898, of Superior Court of IREDELL County.

The plaintiff's husband was killed while at work in Morganton. Having no relations there to whom she could apply for assistance for herself and child, she sent the following telegram to her brother-in-law, who had been living with her, but who was then absent at Davidson, N. C.

"J. W. Mock, Davidson. Come at once; Mr. Cashion is dead. Killed at work. John Payne."

John Payne, the signor of the message, was the agent of plaintiff for the purpose of sending it.

Two issues were submitted to the jury:

1. Was the defendant guilty of negligence, as alleged in the complaint? Answer: Yes.

2. What damage, if any, has the plaintiff sustained by reason of the negligence of the defendant? Answer: $1,000.

Upon the trial there was evidence on the part of the plaintiff tending to support the finding of the first issue.

Upon the question of damages, the defendant asked the following special instruction:

"That upon all the evidence in the case, the plaintiff, if entitled to recover anything, can recover no more than the amount paid by her for sending the telegram, and in no aspect of the case can the jury answer the second issue, more than 25 cents"

This instruction his Honor declined to give, and charged the jury—"If the answer to the first issue be

Yes—then your answer to the second issue would be such amount, as in the opinion of the jury would be a reasonable and just compensation for the mental anguish, if any, occasioned by the failure of Mock to reach Morganton on the night of the 17th of August, and not the mental anguish naturally arising from the death of her husband."

Defendant excepted.

Verdict and judgment for plaintiff—appeal by defendant.

*Messrs. Jones & Tillett,* for defendant (appellant).
*Messrs. J. F. Gamble* and *L. C. Caldwell,* for plaintiff.

DOUGLAS, J.:  This is an action brought to recover damages for mental anguish suffered by the plaintiff from the neglect of the defendant to promptly deliver a telegram.  The facts material to its present determination are few.

On the 17th day of August, 1897, the husband of the plaintiff was killed while at work in Morganton, N. C., leaving the plaintiff and an infant child.  Having no relations in the town, which was the residence neither of her own nor of her husband's family, she caused the following telegram to be sent to J. W. Mock, her brother-in-law, who had been living with her in Morganton, but was then visiting his relatives in Davidson, N. C.:—"Morganton, N. C., Aug. 17, 1897.  J. W. Mock, Davidson.  Come at once, Mr. Cashion is dead. Killed at work.  John Payne."  This telegram was received at the office of the defendant company at Davidson at 5 o'clock the same evening, but was not delivered until the following morning.  Mock testifies that if the telegram had been promptly delivered, he would had

ridden through the country to Statesville in time to take the train that arrived at Morganton about 11 o'clock that night. The plaintiff left Morganton the following morning with the body of her husband, and arrived at Statesville about 7 o'clock a. m., where she remained awaiting a train until 7 o'clock that evening. Mock arrived in Statesville about 10 o'clock the same morning, and returned to Davidson that evening with the plaintiff. Issues were submitted and answered as follows:

"1. Was the defendant guilty of negligence as alleged in the complaint? Ans. Yes."

"2. What damage, if any, has the plaintiff sustained by reason of the negligence of the defendant? Ans. $1,000."

There was sufficient evidence upon the first issue to be submitted to the jury, and we think was submitted under proper instructions.

After the well considered opinion delivered at this Term in *Lyne* v. *Telegraph Co.*, it must be deemed the settled rule of this Court that damages may be recovered for mental anguish, irrespective of any physical injury, caused by the negligence of a defendant in failing to exercise reasonable care and diligence in the delivery of a telegram. The principles therein so clearly given need not now be repeated, as they are founded upon a sound public policy as well as natural justice, and are sustained equally by reason and precedent. *Young* v. *Tel. Co.*, 107 N. C., 370 ; *Thompson* v. *Tel. Co.*, Ibid 449; *Sherrill* v. *Tel. Co.*, 109 N. C., 527, and S. C.; 116 N. C., 653 and S. C. ; 117 N. C., 353 ; *Havener* v. *Tel. Co.*, 117 N. C., 540. The doctrine is of comparatively recent origin, but has already been adopted with varying modifications by the States of Alabama, Illinois, Indiana, Iowa, Kentucky, North Carolina, Tennessee and

Texas, and is recognized in Shearman & R. Negligence, Vol. 2, Sec. 756 (5th Ed.); Thomp. Elect., Sec. 379; 3 Suth. Dam., Sects. 975 to 980 ; 2 Sedg. Dam., Sec. 894.

The rule was perhaps suggested by the following passage in Shearman & Redfield Negligence, Sec. 605 (3rd Ed ): "In case of delay or total failure of delivery of messages relating to matters not connected with busi- ness, such as personal or domestic matters, we do not think that the company in fault ought to escape with mere nominal damages, on account of the want of strict commercial value in such messages. Delay in the an- nouncement of a death, an arrival, the straying or re- covery of a child, and the like, may often be productive of an injury to the feelings which cannot be easily esti- mated in money, but for which a jury should be at lib- erty to award fair damages."

The doctrine first appears, but only inferentially, in 1877, in *Logan* v. *W. U. Tel. Co.*, 84 Ill., 468. It was for the first time, as far as we are aware, distinctly enun- ciated in 1881, in *Se. Relle* v. *W. U. Tel. Co.*, 55 Texas, 308. This celebrated case was subsequently distinguished, doubted, modified and finally practically re-affirmed by the Supreme Court of Texas. The following suggestion from that opinion strongly commends itself to our ap- proval. It says: "That great caution ought to be ob- served in the trial of cases like this, as it will be so easy and natural to confound the corroding grief occasioned by the loss of the parent or other relative with the dis- appointment and regret occasioned by the default or neglect of the company, for it is only the latter for which a recovery may be had, and the attention of juries might well be called to that fact." This is a very important distinction, as mental anguish is naturally so intangible, and when proceeding from two concurring

causes, so difficult of apportionment, that jurors should be careful not to give the plaintiff more than such a just and reasonable compensation as proceeds from the negligence of the defendant. This very difficulty, emphasized by the excessive damages occasionally given, is the strongest reason urged against the adoption of the rule in those jurisdictions where it does not prevail.

On the other hand to say that in such cases the plaintiff can recover only the pittance paid for sending the telegram, seems so utterly subversive of every principle of justice and of public policy as to commend itself neither to the judgment nor the conscience of the court. A *quasi* public corporation, exercising extraordinary powers and receiving enormous profits solely in consideration of the performance of its public duties, can not be permitted to neglect or evade those duties with practical impunity. To allow it to cancel all liability for a negligence that may have wrung the heart-strings of the citizen for whose service it was created, by simply refunding the 25 cents which it had received but never earned, would destroy all sense of responsibility. All privileges have their corresponding duties, and all powers, their equivalent responsibilities. As was said in *Reese* v. *W. U. Tel. Co*, 123 Ind., 294, the failure to promptly deliver a telegram "is not a mere breach of contract, but a failure to perform a duty which rests upon it as the servant of the people."

This liability on the part of public servants to respond in civil damages to the injured party is the surest guarantee for the proper performance of their duties to the public, as criminal and penal statutes are difficult of enforcement. A suitor for a mere penalty does not receive much sympathy, while few care to undertake the criminal prosecution of a powerful corporation for mere

witness fees which are necessarily much less than their actual expenses.    But an action for compensatory damages is looked upon as an effort on the part of the plaintiff to obtain simply what belongs to him as the just equivalent of the injury he has sustained at the hands of the defendant.    He has thus the chance to recover a substantial compensation without the risk or odium of a penal suit.    The public servant, knowing this, is more careful to avoid such liability, which it can always do by the proper performance of its public duties.

A recent and interesting case, especially valuable for its long list of citations, is *Mentzer* v. *Tel. Co.*, 93 Iowa, 752.

The question of damages is peculiarly within the province of the jury and should be settled by them, under proper instructions from the court, in accordance with the dictates of conscience and of common sense, giving to the plaintiff the just measure of compensation for the unlawful injury he has sustained, but remembering always that *generosity is not a virtue when dealing with the property of others.*

Coming to the second issue of the case at bar, as to the amount of damages, we think that the defendant's ninth prayer for instructions or its equivalent, should have been given, and that the failure of the court to do so is such material and substantial error as entitles the defendant to a new trial.    That prayer is as follows : "That upon all the evidence in the case, the plaintiff, if entitled to recover anything, can recover no more than the amount paid by her for sending the telegram, and in no aspect of the case can the jury answer the second issue more than 25 cents."    This prayer is not as definite as it might be; but it is sufficient to cover the point

123—18

that there was no evidence of mental anguish on the part of the plaintiff arising from the failure of her brother-in-law to arrive on the night of the 17th. Mental anguish must be something more than mere disappointment, and like every other material allegation, relied upon by the plaintiff, must be alleged and proved. It is true that there are certain facts which, when proved, presume mental anguish. The tender ties of love and sympathy existing between husband and wife or parent and child are the common knowledge of the human race, as they are the holiest instincts of the human heart. It is useless to tell the jurors of the anguish of a true wife, waiting for hours to take the train to the bed-side of a dying husband, knowing well that the sands of life are falling fast, but uncertain of the vital measure, and finally reaching her journey's end only to bestow her last greeting upon lifeless clay. But beyond the marriage state, this presumption extends only to near relatives of kindred blood, as acute affection does not necessarily result from distant kinship or mere affinity. A brother's love is sufficiently universal to raise the presumption, but not so with a brother-in-law, who is often an indifferent stranger, and sometimes an unwelcome intruder into the family circle. It is true that with him such affection may exist, and in the present case doubtless does exist, but it must be shown. Moreover, there is a difference between those cases where the plaintiff is herself kept away from the bed-side of a dying relative, and where she is merely deprived of the company of another relative whose sympathetic love might tend to comfort and console her in her hour of sorrow. This difference may be considered by the jury in fixing the damages. We do not mean to say that damages for mental anguish may not be recov-

ered from the absence of a mere friend, if it actually results ; but it is not presumed. The need of a friend may cause real anguish to a helpless widow left alone among strangers with an infant child and the dead body of her husband. In the present case the plaintiff seems to have received the full measure of christian charity from a generous community, but it may be that she did not expect it, and looked alone to her brother-in-law whose absence she so keenly felt. If so, she may prove it. We think that the allegations in the complaint are sufficient. An interesting case upon this point is *Tel. Co. v. Coffin*, (30 S. W. Rep., 896) Texas, which is copied ·with a very full note in 5 Am. Elec. Cases, 781.

For failure of proper instruction, a new trial is ordered upon the entire case.

New trial.