MEADOWS v. WESTERN UNION TELEGRAPH CO.

(Filed March 3, 1903.)

1. CONTRIBUTORY    NEGLIGENCE — *Negligence — Telegraphs — Mental Anguish.*

   In this action to recover damages for a failure to deliver a telegram, the evidence does not show contributory negligence on the part of the plaintiff.

2. TELEGRAPHS—*Telegrams—Relationship of Parties—Notice.*

   In an action to recover damages for a failure to deliver a telegram, the relationship of the parties need not be disclosed in the message when the same relates to sickness or death.

3. MENTAL ANGUISH—*Telegraphs—Damages—Negligence.*

   The doctrine is reaffirmed herein that telegraph companies are liable in damages for mental anguish or suffering.

ACTION by W. D. Meadows against the Western Union Telegraph Company, heard by Judge *George H. Brown* and a jury, at November Term, 1902, of the Superior Court of CRAVEN County. From a judgment for the plaintiff, the defendant appealed.

*D. L. Ward,* and *L. J. Moore,* for the plaintiff.
*W. W. Clark, F. H. Busbee & Son,* and *George H. Fearons,* for the defendant.

CLARK, C. J.   The plaintiff went to New Bern, N. C., to see his sister, who was ill, and on leaving for home asked her

husband, Will Phillips, to let him know if she took a turn for the worse. The next week, Mrs. Phillips' condition becoming critical, her husband went to the telegraph office at 4:15 p. m., at New Bern, and, being illiterate, the operator wrote out for him the following message, addressed to plain- tiff at Pollocksville, N. C.: "Will Phillips' wife at point of death. Will Phillips." The charges for sending message were prepaid. The only train for New Bern passed Pol- locksville at 5:04 p. m., 49 minutes after the company re- ceived the message at New Bern. The plaintiff lived in about half mile of the station of Pollocksville, his house being in full sight, and that afternoon he was at work in the field near the house; he was well known to the telegraph messenger boy, and the message could have been delivered within fifteen minutes. It was not delivered until 8:30 p. m. The plaintiff testified he was too unwell to walk to New Bern after dark, and had no horse, and gave his reasons why he could not obtain one that night. He got a team and went next morning, but his sister had then become uncon- scious. He testified that had he received the message in time, he would have gone in five minutes and would have reached New Bern several hours before his sister became unconscious, which witnesses showed was between one and two o'clock a. m. next after the message was sent. The defendant intro- duced no evidence to contradict the above, and asked no in- struction as to its own negligence, which, indeed, was not con- troverted, and rests its defense on three grounds:

1. That the Judge charged there was no evidence of con- tributory negligence. In this there was no error. Had the message been delivered after negligent delay by defendant, but still in time for plaintiff to have caught the train, and he failed to do so, this would have been contributory negligence, but the burden of contributory negligence was on the defend-

ant, and it has not shown that the plaintiff's failure to get a team and go that night through the country was a fault of his. He did go the next morning, which he testified was as he could get a conveyance, and that the feeble state of his health would not have permitted him to go by night, even if he could have procured a conveyance, and that he went as soon as he could get one. These statements are not contradicted by any evidence.

2. The second ground of defense is that the message, on its face, did not show the relationship of the dying person to the plaintiff. The message on its face showed urgency. The defendant was put on notice that immediate delivery was desired. It took, instead, four hours and fifteen minutes to deliver the message thirteen miles away to one in half mile of the office at that point. In *Sherrill v. Tel. Co.,* 109 N. C., 527, the words were, "Tell Henry to come home; Lou is bad sick." In *Cashion v. Tel. Co.,* 103 N. C., 267, the words were these, "Come at once; Mr. Cashion is dead." In these and many other rases in which a recovery for negligence has been sustained, the relationship was not disclosed. But the message being a "death message," of itself showed that the sendee was interested, and that prompt delivery was required. In *Lyne v. Tel. Co.,* 123 N. C., 129, the message was on all fours with this: "Gregory met accident; not live more than twenty-four hours." Nothing indicated the relationship, nor that the presence of the sendee was desired. The sender very rarely informs the sendee of the relationship, which he already knows. The telegraph company knows that from the nature of the telegram prompt delivery is desired, and it contracts with that knowledge, and is fixed with notice that failure to communicate the message promptly will cause grief and anguish. *Bennett v. Telegraph Co.,* 128 N. C., 103. It is responsible for such injury as directly results from its negligence to discharge the duty it has undertaken.

3. The last and principal ground is to ask the Court to overrule its long and unbroken line of decisions sustaining a recovery of damages for mental anguish and suffering, caused by the negligence of telegraph companies in such cases. Damages for mental suffering have always been allowed when they accompany physical injury sustained by the tort of another, and it would be a virtual denial of all redress if a corporation holding a public franchise for the prompt dispatch of intelligence should be absolved from all liability for its negligent failure to deliver messages, which, on their face, indicate to the telegraph company that mental anguish will be the direct result of its failure to discharge its duty of prompt delivery. See cases collected in 8 Am. and Eng. Enc. Law (2d Ed.), 658, 662, 663. But we will not discuss over again the reasoning which has commanded the unanimous opinions of this Court in an unbroken line of decisions from *Young v. Tel. Co.,* 107 N. C., 370, down to the present, and which have received, without a single exception, the support of all the Judges who have occupied the bench in this Court from the time the point was first presented here. It is sufficient to rest the decision upon the doctrine of *stare decisis.*

It is argued to us that the decisions in other jurisdictions are divided on this subject. Such was the case when our first decision was rendered, and the division was again referred to, and the conflicting decisions elsewhere were summed up, in *Sherrill v. Tel. Co.,* 116 N. C., at page 658, and the Court decided it would adhere to our own precedents. This has been reiterated since *Lyne v. Tel. Co., supra,* and in other cases. Our decisions have been numerous, uniform and by unanimous Courts. But we are informed that some other Courts have changed their views. The telegraph business in this country is practically in the hands of one great corporation (or possibly two), which commands the best legal talent, and through their control of press dispatches and otherwise, has means of impressing views in accordance with their

own interests, imperceptibly almost, upon the minds of courts as well as the public. Judging by our experience, their counsel have been persistent and urgent to secure a reversal of the decisions wherever unfavorable to the company on this point. If, by reason of this, or statutory changes, or other causes, the decisions in any other jurisdiction have changed, there is none the less reason to adhere to the rule which has commanded the adherence of every Judge who has ever passed upon the question in this Court. The Legislature has not seen fit to change the law. Every message of this nature in our State is sent, relying upon the guarantee of prompt delivery which is called for by our settled line of decisions.

We do not deem it necessary, therefore, to go over and again reiterate the reasoning on which is basesd so long and uniform a line of decisions.

In South Carolina, the Supreme Court at first took a somewhat different view from ours, allowing damages for mental suffering only when the failure to deliver messages promptly was wanton, wilful or gross. *Butler v. Tel. Co.,* 62 S. C., 222. But the Legislature of that State, 20 February, 1901, passed the following act as a declaration of public policy, which is practically a codification of the law as held in this and other Courts which take the same view, to-wit: "All telegraph companies doing business in this State shall be liable in damages for mental anguish or suffering, even in the absence of bodily injury, for negligence in receiving, transmitting and delivering messages. * * * In all actions under this act, the jury may award such damages as they conclude resulted from the negligence of said telegraph companies."

This statute was held constitutional by the Supreme Court of South Carolina. *Simmons v. Tel. Co.* (11 April, 1902), 41 S. E. Rep., 521.

In the division of opinion among the Courts' of this country, we are unable to refer to the Courts of the mother country, because, since 1868, in England the telegraph has been a part of the postoffice department, and has been owned and exclusively operated by the government, as is also the case in all other great countries of the world, except ours.

No Error.