HUNTER v. TELEGRAPH CO.

(Filed May 17, 1904).

1. TELEGRAPHS—*Issues—Mental Anguish—Damages.*

The proper second issue in an action for damages on the question of mental anguish is: "What damage, if any, has the plaintiff sustained on account of mental anguish caused by such negligence."

2. TELEGRAPHS—*Damages—Expenses.*

In an action against a telegraph company to recover damages for failure to deliver a message announcing the death of a person, the plaintiff cannot recover his expenses in going to the deceased.

3. TELEGRAPHS—*Mental Anguish—Relationship.*

In an action against a telegraph company, a person is entitled to recover damages for mental anguish for failure to deliver a message announcing the death of a second cousin.

3. TELEGRAPHS—*Mental Anguish—Relationship.*

In an action against a telegraph company for damages for failure to deliver a message announcing the death of a second cousin, it is not necessary to disclose to the company the relationship between the sender and the sendee, when it relates to sickness or death.

CONNOR, J., dissenting.

ACTION by T. A. Hunter against the Western Union Telegraph Company, heard by *Judge W. R. Allen* and a jury, at February Term, 1903, of the Superior Court of GUILFORD County.

This is an action brought by the plaintiff to recover damages caused by the non-delivery of a telegram addressed to the plaintiff, announcing the death of a second cousin, a child five years of age. The telegram was as follows: "Scott died last night; will be buried to-morrow morning."

The plaintiff, T. A. Hunter, was allowed, under objection and exception by the defendant, to testify, among other things: "That he came to Greensboro many years ago, and that for several years next thereafter he lived in the family of his cousin, J. S. Hunter, who was the father of the child 'Scott,' mentioned in the telegram; that he married seven years before the death of the child; that he had not lived in J. S. Hunter's family for six years last before the death of the child, but had lived across the street from him. The child was only five years old when he died; that he was born a year after he quit living in the family of J. S. Hunter; that by reason of the relationship and close association he saw a great deal of the child from time to time and loved him very much; that he stood next to his own children in his affection; that he thought a great deal of the little fellow; he was a bright little chap; that he had him on his knee often and naturally thought a great deal of him; he was very dear to me." That he could have gotten home to the funeral if the message had been delivered any time prior to twelve o'clock on the night of the 15th, and that his failure to be at the funeral caused him great pain and anguish of mind. The witness figured up his actual travelling expenses and other things in coming and going, to a sum not exceeding $18.80, and claimed damages in addition thereto for mental anguish caused by not being at the funeral of the child Scott.

The defendant objected and excepted to the action of the Court in allowing the plaintiff to testify in regard to his affection for the child and his anguish and suffering, and insisted that the degree of relationship was too remote to be regarded as an element for damages in this case.

The defendant presented in writing the following prayers for special instructions, which were refused:

"3. It being admitted that Scott, referred to in the pleadings and in the message, was a second cousin of the plaintiff, such relationship was so remote that the failure to get the message in time to be present at the funeral is not the basis for a claim for damages, and the consequent mental anguish therefrom is too remote. You will therefore not consider that in making up your verdict."

"4. Mental anguish on the part of the plaintiff is not an element of damages in this case, it being admitted that the relationship between plaintiff and Scott, mentioned in the telegram, was second cousins."

"5. There is no evidence that the defendant had any knowledge of any peculiar or intimate relations existing between plaintiff and the child Scott, and in the absence of such, it being admitted that Scott was the son of a cousin of the plaintiff, the plaintiff cannot recover anything for or on account of mental anguish."

"6. If the plaintiff is entitled to recover anything, it is only his actual expenses in coming to Greensboro and returning to his business."

Upon the second issue the Court charged the jury, among other things, in substance, that if they believed the evidence they would find that J. S. Hunter was the father of the "Scott" referred to in the telegram and that the plaintiff and J. S. Hunter were first cousins, and that from such relationship there is no presumption that the plaintiff suffered mental anguish on account of his inability to be present at the

funeral of the child Scott, but that the burden was upon the plaintiff to show by the greater weight of evidence that there existed between the plaintiff and the said Scott such tender ties of love and affection that his inability to be present at the funeral caused him to suffer mental anguish, and that such inability to be present was caused by the negligence of the defendant.

The issues and answers, thereto were as follows: 1. "Was the defendant guilty of negligence, as alleged in the complaint?" "Yes." 2. "What damage, if any, has the plaintiff sustained on account of mental anguish?" "One hundred and fifty dollars." 3. "If so, what damage, if any, has plaintiff sustained on account of expenses incurred?" "Eighteen dollars and eighty cents." The defendant appealed from the judgment rendered. (The former opinion in this case is reported in 130 N. C., 602).

*Scales, Taylor & Scales,* for the plaintiff.
*King & Kimball* and *F. H. Busbee & Son,* for the defendant.

DOUGLAS, J., after stating the facts. Although there is no exception to the issues, and apparently no misunderstanding as to their meaning, we think it better to call attention to the inaccuracy of the second issue. It should read as follows: "What damage, if any, has the plaintiff thereby sustained on account of mental anguish?" Or, "What damage, if any, has the plaintiff sustained on account of mental anguish caused by such negligence?" The exact form of the issue is immaterial, but it should directly present the casual relation between the negligence of the defendant and the damages sustained therefrom by the plaintiff. This is especially important in suits involving mental anguish. The defendant did not contribute to the death of the child in any way,

and cannot be held responsible for any anguish or sorrow directly resulting from his death. All that it can be held liable for is the *additional* anguish caused by its own negligence, which, in this case, seems to be only the anguish resulting from the failure of the plaintiff to be present at the funeral. We use the word "anguish" as indicating a high degree of mental suffering, without which the plaintiff should not recover substantial damages. Mere disappointment would not amount to mental anguish or entitle the plaintiff to more than nominal damages. In all cases, damages for mental anguish are purely compensatory, and should never exceed a just and reasonable compensation for the injury suffered. As this Court has said in *Cashion v. Telegraph Co.,* 124 N. C., 459, 45 L. R. A., 160, if the defendant has been negligent, it is the duty of the jury "to give to the plaintiff a fair recompense for the anguish she has suffered from such negligence, but from that alone; and in determining the amount they should render to each party exact and equal justice without the shadow of generosity, which is not a virtue when dealing with the property of others."

As both parties seemed to be content with the issues, which may not have caused any confusion in the minds of the jury, we do not feel authorized to set aside the verdict. However, as there might be cases in which such issues would be fatally defective, we deem it better to again call the attention of the profession to the importance of having issues which, either in themselves or in connection with admissions of record, are sufficient to sustain the judgment. *Tucker v. Satterthwaite,* 120 N. C., 118.

We do not think that the plaintiff can recover his expenses coming to Greensboro, as they do not appear to have been caused in any way by the defendant's negligence. If the defendant had been guilty of no negligence whatever, and the telegram had been promptly delivered, the plaintiff would

apparently have incurred the same travelling expenses in coming to Greensboro. Therefore the amount of $18.80 found in the third issue must be stricken out of the judgment.

The defendant contends that, as a matter of law, the plaintiff cannot recover on account of simple inability to attend the funeral of a second cousin, and that if he can so recover he can do so only upon the absolute prerequisite that the defendant knew or was informed of the peculiar relations existing between him and the child. · Both of these questions have been decided by this Court adversely to the defendant. In *Cashion v. Telegraph Co.*, 123 N. C., 267, it was held that, while the relation of brother-in-law is not sufficiently near to raise any presumption of mental anguish, the actual existence of said anguish, if found as a fact by the jury, would entitle the plaintiff to recover substantial damages. In that case the Court says: "It is true that there are certain facts which, when proved, presume mental anguish. The tender ties of love and sympathy existing between husband and wife or parent and child are the common knowledge of the human race, as they are the holiest instincts of the human heart. * * * But beyond the marriage state, this presumption extends only to near relatives of kindred blood, as acute affection does not necessarily result from distant kinship or mere affinity. A brother's love is sufficiently universal to raise the presumption, but not so with a brother-in-law, who is often an indifferent stranger and sometimes an unwelcome intruder in the family circle. It is true that with him such affection may exist, and in the present case doubtless does exist, but it must be shown."

In *Bennett v. Telegraph Co.*, 128 N. C., 103, the Court, speaking through *Clark, J.*, says: "The objection that the relationship of the sendee (father-in-law) does not entitle the plaintiff to recover for mental anguish by reason of fail-

HUNTER *v.* TELEGRAPH CO.

ure to be at his daughter's funeral, is answered by the discussion and decision in *Cashion v. Telegraph Co.,* 123 N. C., 267."

This line of decisions has been so recently affirmed and followed in the well-considered opinion in *Bright v. Telegraph Co.,* 132 N. C., 317, that further discussion seems useless. The Court, speaking through *Walker, J.,* says, on pages 322, 323: "The law does not regard so much the technical relation between the parties or their legal status in respect to each other as it does the actual relation that exists and the state of feeling between them. It does not raise any presumption of mental anguish when there is no relation by blood, but if mental suffering does actually result from the failure to deliver a message where there is only affinity between the parties, it may be shown and damages recovered. A woman suddenly bereft of her husband, and who has no father or other relative or friends to whom she can turn in her distress, except the uncle of her husband, might well call upon him for consolation and assistance, especially when, as is abundantly shown in the evidence in this case, he was her husband's nearest living relative, and had reared and educated him and was 'devoted to her husband and herself,' and stood toward them in the place of a parent. She had every right to expect that as soon as the sad news of the death of her husband had reached him, he would come at once to her and give her that comfort, consolation and assistance which she sorely needed. If he was not her father, he entertained for her all of the tender regard and affection of a parent, and was as much interested in her welfare as if he had been her father, and she could therefore reasonably expect that he would do, under the circumstances, precisely what her father would have done if he had been living. It is needless to discuss the question further, as this Court has settled it against the defendant. 'We do not mean to say,'

says *Douglas J.*, speaking for the Court, 'that damages for mental anguish may not be recovered for the absence of a mere friend, if it actually results; but it is not presumed. The need of a friend may cause real anguish to a helpless widow, left alone among strangers with an infant child and the dead body of her husband. In the present case, the plaintiff seems to have received the full measure of Christian charity from a generous community, but it may be that she did not expect it, and looked alone to her brother-in-law, whose absence she so keenly felt. If so, she may prove it,' citing *Cashion v. Telegraph Co.*, 123 N. C., 267."

It will be seen that the cases all proceed upon the principle that the nearness of the relationship is material only where the presumption is relied on; but that mental anguish may exist as a fact where there is no such presumption. In such cases it is a matter of proof, and may be inferred from all the surrounding circumstances, as well as the personal testimony of the plaintiff. The plaintiff is of course an interested witness, and his testimony, like that of all such witnesses, should be scrutinized with care; but if after such scrutiny the jury believe he has testified truthfully, they should give to his testimony the same weight they would to that of any other credible witness. There is no reason why a party should not become a witness in his own behalf, especially in matters peculiarly within his personal knowledge, and the law does not discredit him for doing so, but simply provides for that just scrutiny by which alone the motives of human conduct can be interpreted.

The second exception is to the refusal of the Court to charge that the plaintiff could not recover in the absence of any evidence that the defendant knew or was informed of the peculiar and intimate relations existing between the plaintiff and the deceased child. Such instructions were properly refused, as has been repeatedly held by this Court. *Sherrill*

135——30

*v. Telegraph Co.,* 109 N. C., 527; *Lyne v. Telegraph Co.,* 123 N. C., 129; *Cashion v. Telegraph Co.,* 123 N. C., 267; same case, 124 N. C., 459; *Laudie v. Telegraph Co.,* 124 N. C., 528; *Hendricks v. Telegraph Co.,* 126 N. C., 304, 78 Am. St. Rep., 658; *Laudie v. Telegraph Co.,* 126 N. C., 431, 78 Am. St. Rep., 668; *Bennett v. Telegraph Co.,* 128 N. C., 103; *Meadows v. Telegraph Co.,* 132 N. C., 40; *Bright v. Telegraph Co.,* 132 N. C., 317.

In Sherrill's case the telegram was, "Tell Henry to come home, Lou is bad sick." In Lyne's case it was "Gregory met accident; not live more twenty-four or twenty-six hours." In Cashion's case it was "To J. W. Mock. Come at once. Mr. Cashion is dead; killed at work. John Payne." In Laudie's case it was "Frank dead. Meet depot at Wadesboro 8 A. M. Bury him in Chesterfield; grave three feet." In Hendricks' case it was "Presh died this morning," and "Come quick, will bury Presh to-morrow." In Meadows' case it was "Will Phillips' wife at point of death." In Bright's case it was "Mr. Bright is dead, will bury at Liberty Sunday morning." In that case, 132 N. C., at page 324, *Walker, J.,* speaking for the Court, says: "It is not a valid objection to the plaintiff's right of recovery that the message did not sufficiently disclose its purpose, or show that the plaintiff desired Cooper to come to Wadesboro. It has been repeatedly decided by this Court, in cases where the relationship of the parties was not disclosed, and the special purport of the message could not possibly have been understood, that it was not necessary for the company to know the relation between the sender and sendee from the terms of the message, or to know anything more than that the message is one of importance, and that this should always be inferred from the fact that it relates to the illness or death of a person. When this is the case, it is sufficient to put the company on notice

that a failure to deliver will result in mental suffering, for which damages may be recovered."

The judgment of the Court below is

Affirmed.


CLARK, C. J., concurring.    Mental suffering is as real as physical.    Every one who has suffered either is a competent witness that there is no fiction about it.    There is the same practical difficulty in measuring compensation for physical anguish as for mental, but the same difficulty arises also in nearly all cases of estimating unliquidated damages.    Juries, under the instruction of learned and just judges, who will restrain excessive verdicts, must, upon consideration of all the evidence, award fair compensation.    All courts allow compensation for mental suffering, not only when accompanied by physical pain, but in many cases when there is no physical suffering, as in actions for seduction, slander, libel, breach of promise of marriage, and perhaps some others.    The courts in the several independent State jurisdictions in this country have not been agreed as to the allowance of damages for mental suffering when it has been caused by the wrongful or negligent conduct of a telegraph company in the delay or non-delivery of what is known as death messages, but the uniform and unbroken decisions of this Court place it among those that allow recovery in such cases.    The legal rule laid down is clear and just: "In all cases, damages for mental anguish are purely compensatory and should never exceed a just and reasonable compensation for the injury suffered." And we have just repeated in *Bowers v. Telegraph Co.*, 135 N. C., at this term, that mere disappointment will not amount to mental anguish.

When the relationship of the parties is close, the law presumes some mental anguish from the fact that the telegram was sent, the amount of the compensation for the mental suf-

fering caused by the failure to deliver being a matter for the jury upon the evidence. The nearness of the relationship is only material when this presumption is relied upon. There is no better statement of the rule on this point than that to be found in the clearly reasoned opinion of *Mr. Justice Walker* in *Bright v. Telegraph Co., 132* N. C., 317: "The law does not regard so much the technical relation between the parties, or their legal status to each other, as it does the actual relation that exists and the state of feeling between them. It does not raise any presumption of mental anguish when there is no relation by blood, but if mental suffering does actually result from the failure to deliver a message (of this nature) where there is only affinity between the parties, it may be recovered. * * * It is not necessary for the company to know the relation between the sender and the sendee from the terms of the message, or to know anything more than that the message is one of importance, and this should always be inferred from the fact that it relates to the illness or death of a person. When this is the case, it is sufficient to put the company on notice that a failure to deliver will result in mental suffering, for which damages may be recovered."

Since it is established as a fact in this case that there was mental suffering caused by the defendant's failure to deliver the telegram, and there was evidence to prove it, this case does "not fall beyond the limits of the law," which holds the defendant liable to render just compensation for the injury it has inflicted.

WALKER, J., concurring. The doctrine of mental anguish which has been recognized and applied in this Court for many years, either has no scientific or rational basis upon which to rest so as to justify a recovery by father, brother, husband, or any other person bound to another by a close tie of blood or marriage, of damages from a telegraph company

for the negligent failure to deliver a message, or the rulings and judgment in this case must be free from error. We cannot deny to the plaintiff the right to recover any damages which he may have sustained, unless we completely repudiate the doctrine, reverse our former decisions and deny to everybody the right to recover damages for mental anguish caused by the negligence of a telegraph company in delivering messages. When we once admit the correctness of the principle upon which such recoveries have been based (and this has been done at the present term in *Cogdell v. Telegraph Co.,* and *Hood v. Telegraph Co.,* and at the February Term, 1902, in *Meadows v. Telegraph Co.,* 132 N. C., 40, and *Bright v. Telegraph Co.,* 132 N. C., 317, by a unanimous court), we must carry this admittedly correct principle to its legitimate and logical conclusion and to its necessary consequence, and permit a recovery by any one, without regard to the closeness of relationship, who can show the negligence and that mental anguish proximately resulted therefrom.

The doctrine, as stated in the former decisions of this Court, could not have been restricted to close relationship, but in its very nature extended to those which are remote, as it was founded upon a breach of public duty by the telegraph company, which duty required that messages should be transmitted and delivered with reasonable care and dispatch and with due regard for the rights of the patrons of the company. The public is vitally interested in the performance of this duty and, whenever there is a breach of it, the right to recover damages flowing from the breach depends upon the ability of the party who alleges that he has been injured by the failure of duty to prove his *actual* damages, which include damages for mental anguish, and may consist solely of such damages. *Cashion v. Telegraph Co.,* 123 N. C., 267. It is a question of proof, and not one of close relationship, which determines the right to recover damages for the injury.

We can imagine a case where there is no relationship, and yet where the parties are quite as closely united and bound to each other by ties of affection as if a close relationship existed. The closeness of the relationship does not of itself necessarily prove that there has been mental anguish where there has been a negligent failure to deliver a message. It is a circumstance to be considered by the jury in determining whether or not there has been any mental suffering, and this Court has said that the relationship of the parties may be so close as to raise a presumption of mental anguish and consequent damage. The doctrine, as established by the former decisions of this Court, is that mental anguish may be the basis for the recovery of damages without regard to the particular relationship of the parties. The relationship was referred to merely as being evidence of mental anguish, which is strong or weak, according to the degree of relationship. It was never intended to assert that a person who is not closely related by blood or marriage to the person whose sickness or death is announced in the message cannot recover if mental anguish actually resulted from the default of the defendant. Take the case of a person who is but slightly related to the person whose sickness or death is announced in the message, but who stands towards him *in loco parentis*. Should he be denied the right to recover when a son, between whom and his father there has been long estrangement and bitterly hostile feelings, is permitted to recover for failure to deliver a message announcing his father's sickness or death, merely because he and his father are closely related by blood? I go back to my first proposition: The doctrine is either fundamentally wrong, or if it is right the idea that it is confined to close relations must be abandoned, as, in my judgment (and I say so with the utmost respect for the opinion of others), it has nothing to sustain it. If the doctrine established by our former decisions is wrong, it should be promptly

reversed, and the cases in which it was established should be overruled; but if it is right, it should be enforced by a reasonable and, above all things, a logical application of the principle on which it rests to the facts of each case as presented. I can see no middle ground upon which we can safely stand. We are either right in this particular case or we are wrong altogether. If the doctrine is limited in its operation, as suggested, I cannot give my assent to it at all, for there must be something radically wrong in a principle which cannot be safely carried to its logical results, so as to reach all cases coming fairly within its scope. If the reason upon which the doctrine is founded applies to one case, it must apply to all, leaving the degree of kinship to affect only the amount of the damages. The insuperable difficulty which it is admitted will be encountered in drawing the line at which the doctrine must cease to have any application, is a cogent reason for the assertion that there is no limit to the doctrine if it was a sound one in its origin. It is replied that the line at which there ceases to be a presumption of mental anguish cannot be drawn with any accuracy. This may be a reason, not for questioning the correctness of the doctrine, nor for limiting it in its operation, but merely for denying that there is any such presumption. It may be that it would be more correct to say that relationship is a fact or circumstance to be considered by the jury as evidence of mental anguish, which will be stronger or weaker in its probative force in proportion to the degree of relationship, whether near or remote. My conclusion is that if we are to continue to recognize and enforce the right to recover for mental anguish, the principle which underlies and supports that right cannot be confined to any merely arbitrary limit, but must be applied to any case in which a negligent failure to deliver a message may cause mental suffering.

If the principle has no proper place within the borders of

our jurisprudence, we should drive it out at once as an unwelcome intruder, and not expel it by gradually limiting its sphere of operation or by a slow process of elimination. I repeat: The doctrine of mental anguish, as it is called, is either radically wrong, or it applies to the facts of this case.

CONNOR, J., dissenting. The doctrine by which the sendee of a message was held to be entitled to recover for failure to deliver promptly, in addition to nominal damages, compensation for mental anguish, was first established by this Court in *Young v. Telegraph Co.,* 107 N. C., 371, 9 L. R. A., 669, 22 Am. St. Rep., 883. The message in that case announced the extreme illness of the sendee's wife and urged him to "come in haste." As the facts appeared in the record they appealed strongly to the feelings of the Court—the negligence was gross. The doctrine then established has been fruitful of much litigation. Many of the cases have shown gross negligence, and some of them most aggravating and intense suffering caused thereby. Whatever may be my opinion of the scientific basis of the doctrine, I have no disposition to regard it as an open question in this Court. It is settled here. No one who has given the question careful thought can fail to be impressed with the difficulty of giving it a satisfactory practical operation. To estimate and separate in dollars the quantum of suffering, mental and otherwise, a person experiences by reason of learning of the death and of being unable to attend the funeral of a deceased relative must give to a conscientious juror much difficulty. I cannot but think that if the Judge who, with great lucidity, lays down the principle, were called upon to apply it, the doctrine would not find so much favor. However this may be, the best answer to the objection that it is difficult to do is found in the fact that it is done. The only question presented by the appeal in this case is whether a doctrine originating in the case of an absent husband summoned to the

death-bed of a dying wife, and applied to other and more distant relatives, is to have any limit whatever, I fully recognize how difficult it is to fix the limit. As I understand the cases, within a certain limit there is a *presumption* that the plaintiff sustained mental anguish, as in case of a brother. *Cashion v. Telegraph Co.,* 124 N. C., 459. Beyond this limit there is no presumption, but the plaintiff must retain in his memory, and, months after the injury, unfold his mental condition to the jury to enable them to say how many dollars will compensate him. The Court says: "Damages for mental anguish are purely compensatory and should never exceed a just recompense for the anguish." If it be said, as it certainly is, that it is difficult to say within what degree of relationship the sendee has a cause of action, it may be answered that it is not more so than to say within what degree there is a *presumption* of mental anguish. It is said that fictions in the law "have had their day," and "have been dead thirty-five years." It would seem, with all possible deference, that the doctrine of mental anguish, with its logical results, is not very far removed from the domain of legal fiction.

I cannot concur in the conclusion reached by the Court in this case. It may be that the Court is committed to an unlimited field of litigation in these cases. I do not care to review the cases. I simply wish to say that in my opinion if any limit is ever fixed, the plaintiff's case will fall far beyond the outside boundary. It is difficult to discuss these cases. Men view such matters so differently that they may not easily make themselves understood. If it is desired to compel the defendant company to discharge its duty to the public with all reasonable promptness and dispatch, there can be no doubt that the Legislature has the power by appropriate legislation to do so.

I do not think that the plaintiff in any respect of the testimony is entitled to recover for mental anguish.