HARRISON v. TELEGRAPH CO.

(Filed November 15, 1904).

INSTRUCTIONS—*Negligence—Damages—Telegraphs.*

> In an action against a telegraph company for failure to deliver a
> telegram, it is error for the trial judge to assume in his instruc-
> tions the fact of the relationship of the plaintiff to the deceased,
> there being no evidence or legal admission thereof, though the
> fact was not questioned on the trial.

ACTION by Annie Harrison and husband against the
Western Union Telegraph Company, heard by *Judge O. H.
Allen* and a jury, at February Term, 1904, of the Superior
Court of ROWAN County. From a judgment for the plain-
tiffs the defendant appealed.

*R. Lee Wright, George W. Garland* and *Walser & Walser,*
for the plaintiffs.
*C. W. Tillett, F. H. Busbee & Son* and *E. C. Gregory,*
for the defendant.

DOUGLAS, J. This is an action brought by the *feme* plain-
tiff to recover damages for the negligent failure to deliver a
telegram within a reasonable time. This failure to promptly
deliver, of itself, raised the presumption of negligence aside
from the substantial testimony tending to prove it. *Sherrill
v. Telegraph Co.,* 116 N. C., 655; *Hendricks v. Telegraph
Co.,* 126 N. C., 304, 78 Am. St. Rep., 658; *Laudie v. Tele-
graph Co.,* 126 N. C., 431, 78 Am. St. Rep., 668; *Rosser v.
Telegraph Co.,* 130 N. C., 251; *Hunter v. Telegraph Co.,*
130 N. C., 602; *Cogdell v. Telegraph Co.,* 135 N. C., 431.

The telegram was in the following words: "Banson died
this morning at 6 o'clock. Buried 4 o'clock to-morrow."
Stating upon its face the pregnant facts of death and burial,

it was sufficient of itself to put the defendant on notice of its importance aside from the testimony tending to show special information given by the plaintiff to the defendant company. *Hunler v. Telegraph Co.,* 135 N. C., 458, and cases therein cited.

We do not understand the defendant seriously to contest the verdict as to its own negligence, but to direct its contentions principally, if not solely, to the measure and quantum of damages. There is but one exception which we deem necessary for discussion. The Court below charged as follows: "While there is no direct evidence that the *feme* plaintiff suffered any mental anguish from not being able to see her son's body or to attend the funeral, yet the jury are allowed to presume the existence of such pain and mental anguish from the relationship existing between the *feme* plaintiff and her son." We think there was error in this part of the charge inasmuch as his Honor assumed as proved the alleged relationship. He should have charged substantially as follows: "If you find from the evidence that the plaintiff was the mother of the deceased, the law then raises the presumption of mental suffering on her part." It is but just to his Honor to say that the fact of such relationship seems not to have been called in question upon the trial, but, as we cannot find in the record any legal admission to that effect either expressly or by necessary implication, and as the defendant insists upon the exception, we must adhere to the general rule requiring all material allegations to be proved by the party alleging them. This matter does not come under any of the exceptions to the rule. Indeed, the fact of such relationship was peculiarly within the knowledge of the plaintiff to whose recovery it was essential in the absence of other proof of suffering. It now seems to be an admitted fact, appearing from an uncontradicted affidavit filed in support of a motion for a new trial on account of newly discovered

testimony, that the deceased was the son of the male plaintiff but the step-son of the female plaintiff, who is the real plaintiff in this action.

Such relationship does not, in our opinion, raise the presumption of mental suffering. We do not base our decision as to the error in the charge upon the newly discovered testimony, but upon the general rule of law, the wisdom of which is, however, emphasized by such testimony. We do not mean to intimate in any degree that the facts of the actual relationship were wilfully concealed by the plaintiff, but they are none the less material. Neither do we mean to say that she did not endure mental suffering or that she is not entitled to a substantial recovery. These are matters of proof. It may well be that standing in the place of a mother, she had learned to love him with the affection of a mother, and that in the long years of intimate association the mental ties of affection had become so entwined that she knew no difference between the ties of nature and of law. If so, she may show it, and recover such damages as the jury may deem an adequate compensation for her mental suffering, or such part thereof, as may have been caused by the negligence of the defendant.

This case comes clearly within the rule in Cashion's case, and can perhaps best be illustrated by the following extracts from the opinions in that and Bright's case.

In *Cashion v. Telegraph Co.,* 123 N. C., 267, this Court says, on page 274: "But beyond the marriage state this presumption extends only to near relatives of kindred blood, as acute affection does not necessarily result from distant kinship or mere affinity. A brother's love is sufficiently universal to raise the presumption, but not so with a brother-in-law, who is often an indifferent stranger and sometimes an unwelcome intruder in the family circle. It is true that with him such affection may exist, and in the present case

doubtless does exist, but it must be shown.   *   *   *   We do not mean to say that damages for mental anguish may not be recovered from the absence of a mere friend, if it actually results; but it is not presumed.  The need of a friend may cause real anguish to a helpless widow left alone among strangers with an infant child and the dead body of her husband.  In the present case the plaintiff seems to have received the full measure of Christian charity from a generous community, but it may be that she did not expect it, and looked alone to her brother-in-law whose absence she so keenly felt. If so she may prove it."

In *Bright v. Telegraph Co.,* 132 N. C., 317, this Court says, on page 322: "The law does not regard so much the technical relation between the parties or their legal status in respect to each other as it does the actual relation that exists and the state of feeling between them.  It does not raise any presumption of mental anguish when there is no relation by blood, but if mental suffering does actually result from the failure to deliver a message where there is only affinity between the parties, it may be shown and damages recovered.  A woman, suddenly bereft of her husband, and who has no father or other relative or friend to whom she can turn in her distress except the uncle of her husband, might well call upon him for consolation and assistance, especially when, as is abundantly shown by the evidence in this case, he was her husband's nearest living relative and had reared and educated him and was 'devoted to her husband and herself,' and stood towards them in the place of a parent.  She had every right to expect that as soon as the sad news of the death of her husband had reached him, he would come at once to her and give her that comfort, consolation and assistance which she sorely needed.  If he was not her father, he entertained for her all of the tender regard and affection of a parent, and was as much interested in her

welfare as if he had been her father, and she could therefore reasonably expect that he would do under the circumstances precisely what her father would have done if he had been living." For the error in the charge as herein pointed out, a new trial must be ordered.

New Trial.

CONNOR, J., concurs in result.