DAYVIS v. TELEGRAPH CO.

(Filed September 26, 1905).

*Telegraphs—Mental  Anguish—Damages—Withdrawal  of Incompetent Evidence.*

1.  The addressee of a telegram, where there has been a wrongful failure
    to deliver, or negligent error in transmission, may, under certain
    circumstances, recover compensatory damages for mental anguish,
    where the message is for his benefit or concerns his domestic or
    social interests, and this independent of any bodily or substan-
    tial pecuniary injury.

2.  In an action to recover for mental anguish for negligence in the
    transmission or delivery of a telegram, it is not necessary that
    the claimant should be a very near relative, nor that the tele-
    gram should contain a message concerning sickness or death,
    but it is necessary that the grievance complained of should
    amount to a high degree of mental suffering and not consist
    simply of annoyance or disappointment and regret.

3.  Before a recovery can be had for mental anguish, the telegraph
    company must be notified that mental anguish will naturally
    and reasonably follow as a result of its misconduct, either from
    the character and contents of the message itself or from facts
    within its knowledge, or brought to its attention at the time
    of accepting the message for transmission, or certainly in time to
    have enabled it to avoid the consequence complained of, by due
    care.

4.  In an action by the plaintiff to recover for mental anguish from
    the failure of the defendant to deliver the following message sent
    to him by his wife: "Got left.  Be there at 7:30 o'clock tomor-
    row."  Signed "D," the testimony of his wife that when she
    gave the message to the operator she told him she had been
    thrown over in Weldon, had two children with her, they were
    sick, her husband was to meet her and would be worried unless he
    got the message, is ample to notify the defendant that its fail-
    ure to deliver the message might result in actionable suffering
    and mental anguish.

5. In cases for mental anguish, in awarding the damages to be recovered, the law governing cases for breach of contract applies.

6. In an action by the husband for mental anguish the admission of evidence of the privation and suffering of the wife and children would be reversible error but for the fact that in the charge the court withdrew it from the consideration of the jury.

7. Where the court had in express terms told the jury that neither the privations of the wife nor her husband's mental anxiety, by reason of such suffering, should be considered by them, the addition that they should consider "only the mental anxiety of the husband by reason of these circumstances" could only mean such circumstances as under his charge should be held pertinent.

BROWN and CONNOR, JJ., dissent.

8. A telegraph company is liable in damages for the mental anguish suffered by the husband by reason of the company's default in failing to deliver a message sent by the wife who had taken the wrong train, informing him of this fact, the purpose of the message being to prevent anxiety. (*Sparkman v. Telegraph Co.*, 130 N. C., 447, overruled).

BROWN, J., dissents.

ACTION for mental anguish by James L. Dayvis against the Western Union Telegraph Co., heard by *Judge B. F. Long* and a jury, at the September Term, 1905, of the Superior Court of BEAUFORT County.

There was testimony to the effect that on the morning of June 26, 1904, plaintiff's wife left Durham, N. C., to go to Washington, N. C., to which place her husband had recently moved his residence. In the regular course of travel, Mrs. Dayvis would have reached Washington on the afternoon of the 26th, at about 6 o'clock; that she and two children who accompanied her were all sick, and she had written to the plaintiff, her husband, on Friday before leaving Durham on Sunday; that the plaintiff had sent his wife enough money to defray her expenses from Durham to Washington, via Selma and Rocky Mount. At Rocky Mount, by misdirection of a railroad station employee, she and her children were put on

the train going to Weldon, where they arrived about 5 p. m., and were unable to go on to Washington till the afternoon of the following day, June 27; that the plaintiff, who was expecting his wife and children on the afternoon train on June 26, had gone up on the morning train to meet them and had boarded the returning train in the afternoon, expecting to meet them at a station called Pactolus; he inquired for them and could get no information; he looked through the train and found their trunk checked through from Durham to Washington. Immediately on arriving at Washington, he went to his hotel and inquired for a telegram and none had been received; he then went to the telegraph office and it was closed; this was about 6:30. The train had arrived on time at about 6:20. He endeavored to get a telephone communication with his wife and children, but failed, and could hear nothing from them until their arrival on the train of the afternoon of the 27th, as stated. He was aware they were sick, and had only money enough to pay their way to Washington, and he suffered great distress and mental anguish by reason of his uncertainty as to their whereabouts, etc.; that the plaintiff had been a resident in Washington about one month, was at the Hotel Pamlico, and had received telegraphic messages at that place during his stay.

Mrs. Dayvis testified that when she arrived at Weldon with her children at 5 p. m., June 26, she went to the office of defendant company and wrote a message to her husband on one of its blanks as follows: "J. L. Dayvis, Washington, N. C. Got left. Be there at 7:30 o'clock tomorrow." Signed "D." She delivered it to the operator. She stated that she told the operator that she had been thrown over in Weldon, had two children with her who were sick, her husband was to meet her and would be worried unless he got the message, and told him to be sure to get it off right away, and he said he would; that she came back in an hour and a half and asked the operator if he had sent the message, and he said he got

DAYVIS *v.* TELEGRAPH CO.

it off all right; that the message was never received by the plaintiff.

The operator testified that the message was given him by Mrs. Dayvis at 5:12 in the afternoon of the 26th, and he sent it on not long after; that not being able to tell, when he read the message, whether it was signed "D" or "W," he carried the same to the hotel where she was and asked about it, and was told the letter was "D;" that she did not tell him who J. L. Dayvis was, nor what her name was, nor that she and her children were sick, nor that her husband would meet her and be worried if he did not receive the message; that all she said was that she had got on the wrong train at Rocky Mount, and she asked the witness to get the message off promptly; that she came back about six o'clock, or later, and asked if the message had been sent and heard from; he replied, "sent, but not heard from."

Under the charge of the court there was a verdict and judgment for the plaintiff and the defendant excepted and appealed.

*J. D. Grimes* and *W. B. Rodman* for the plaintiff.

*F. H. Busbee & Son; Small & McLean* and *Murray Allen* for the defendant.

HOKE, J., after stating the case: At the close of the plaintiff's testimony, and again at the close of the entire testimony, there was a motion to nonsuit by the defendant, and exception duly taken.

The decisions of this court have established the principle that the addressee of a telegram, where there has been a wrongful failure to deliver or negligent error in transmitting the message, may, under certain circumstances, recover compensatory damages for mental anguish where the message is for his benefit or concerns his domestic or social interests, and this, independent of any bodily or substantial pecuniary

DAYVIS *v.* TELEGRAPH CO.

injury. *Young v. Tel. Co.,* 107 N. C., 370; *Sherrill v. Tel. Co.,* 109 N. C., 527; *Kennon v. Tel. Co.,* 126 N. C., 232; *Wadsworth v. Tel. Co.,* 86 Tenn., 695. If mental anguish is shown to exist it is not required for a recovery that the claimant should be a very near relative. *Bright's case,* 132 N. C., 317; *Hunter's case,* 135 N. C., 458. Nor is it necessary that the telegram should contain a message concerning sickness or death. *Green's case,* 136 N. C., 489, 506. It is necessary, however, that the grievance complained of should amount to a high degree of mental suffering, within the natural and correct definition of mental anguish, and not consist simply of annoyance or disappointment and regret. *Hancock's case,* 137 N. C., 497.

The decisions further hold that before a recovery can be had on that account, the defendant company must be notified that mental anguish will naturally and reasonably follow as a result of its misconduct, either from the character and contents of the message itself or from facts within its knowledge, or brought to its attention at the time of accepting the message for transmission, or certainly in time to have enabled it to avoid the consequence complained of by due care and diligence. *Kennon's case, supra; Williams's case,* 136 N. C., 87; *Green's case,* 136 N. C., 489; *Cranford's case,* 138 N. C., 162.

The judge told the jury that such notice must be brought home to the defendant, and under his charge the jury have necessarily decided that the plaintiff's version as to what took place, at the time the telegram was handed to the defendant's agent, was the true one.

Applying these principles to the facts of the case before us, the plaintiff has made out a cause of action. The testimony of Mrs. Dayvis on that point was as follows: "When I got to Rocky Mount I went to Weldon. I got to Rocky Mount about 2 p. m. I got to Weldon about 5 p. m. registered at the hotel, went to the telegraph office (identifies

the message written out), gave it to the operator, told him I had been thrown over in Weldon, had two children with me, they were sick, my husband was to meet me and would be worried unless he got the message. I told him to be sure and get it off right away, and he said he would." (The defendant in apt time objected to all the conversation with the defendant's agent; objection overruled and defendant excepted). "I came back in an hour and a half and asked the agent if he had heard anything from the message and he said he had not yet, and I asked him if he had sent it off and he said he got it off all right."

The court is of opinion that there was ample testimony to notify the defendant that if the message was not delivered and the husband was thereby left in ignorance of the whereabouts and condition of his wife and children, it would be to him a matter of grave concern and might well result in actionable suffering and mental anguish. There was no error in overruling the defendant's motion to nonsuit.

In some of the cases on the subject of mental anguish, there is a strong intimation that the action should be in tort, as involving a breach of public duty, and there is high authority to the effect that only in this character of action can a suit be sustained by the addressee of a message. In awarding the damages to be recovered, however, where the right to damage has been established, the decisions of this court have thus far uniformly applied the law governing cases for breach of contract, and this course seems very generally to have obtained. 27 Am. & Eng. Enc. (2nd Ed.), 1059; Thompson on Law Elec., sec. 386.

In the examination of Mrs. Dayvis, who was a witness for plaintiff, she was asked by the plaintiff's counsel if she and her children had anything to eat in Weldon, the day they were there, and the witness replied, "Only a few cakes and a couple of cocoa colas." The witness was then asked why, and she replied "Because they had no money." This evi-

dence was admitted over the objection by defendant, and the defendant excepted. This is an action by Mr. Dayvis to recover damage for mental anguish by reason of his just alarm from being left uninformed as to the placing and condition of his wife and children. The actual privation and suffering of Mrs. Dayvis and her children are not pertinent to the inquiry. The testimony, if competent at all, could only have been so held as corroborative evidence, and under the circumstances of the case the court inclines to the opinion that the admission of the testimony would be reversible error but for the fact that, in the charge, the court entirely withdrew it from the consideration of the jury.

In response to prayers for instruction preferred by the defendant's counsel, the judge instructed the jury as follows: "I have been requested by counsel for defendant to instruct you that you should not consider any suffering or anxiety which the plaintiff's wife or children suffered by reason of taking the wrong car to reach Rocky Mount and having to stop at Weldon, or being ill during the time, or having no money with them. I give you that instruction. The defendant also asked me to instruct you that the jury should not consider any evidence with reference to the plaintiff's anxiety caused by the mental or physical suffering of his wife or children, due to the fact that they were unwell and without means to support them. The court gives you that instruction." The defendant concedes that this part of the charge would amount to a withdrawal of the objectionable testimony if it stood alone, but contends that it was in effect again submitted by reason of the following addition to the charge: "You will note that these last two instructions relate to recovery based upon the idea of the suffering of the wife or of the children, or of their anxiety and trouble that they may have had at Weldon. You will understand that this action is not brought by the wife nor by the children; it is brought by the husband; and therefore you are limited

in this case to a consideration of the husband and his suffer-
ing and mental anxiety by reason of these circumstances."
The court does not think that these concluding words of
the judge should receive the interpretation and effect insisted
on by the defendant. The judge had just in express terms,
and in response to a special request, told the jury that neither
the privations of Mrs. Dayvis at Weldon nor her husband's
mental anxiety, by reason of such suffering, should be con-
sidered by them, and when he added "only the mental anxiety
of the husband by reason of these circumstances," by fair
interpretation, we think this could only mean such circum-
stances as under his charge should be held pertinent, and no
doubt the jury so understood it.

The court is referred by the defendant to *Sparkman's case,*
130 N. C., 447, as authority for the position that no recovery
at all can be had in the case now being considered. In that
case, S. B. Sparkman, at Durham N. C., at 2:10 o'clock p.
m., March 11, 1904, received a message from one S. John-
ston, Little Rock, Ark., that his brother, E. Sparkman, had
died at Little Rock, Ark., on the day before. About two
hours later S. B. Sparkman sent or left a message with the
company addressed to S. Johnston, Little Rock, Ark., as
follows: "Shall we look for him? What are you going to
do?" Signed, S. B. Sparkman. The message was never de-
livered to Johnston, and, on action brought for mental an-
guish, judgment was given for the defendant. There is no
doubt that this case is well decided, and for the reason given
by the court that there was nothing in the language of the
telegram nor in anything brought to the attention of the
company leading it to believe that mental anguish would re-
sult by reason of the failure to deliver the message. "Sure-
ly," said the court, "the distance between Durham and Little
Rock, in connection with the brother's death the day before
the telegram was delivered to the defendant. would preclude
any idea that there was a desire or purpose on the part of

the plaintiff to go to Little Rock to attend the funeral ser-
vices." As a matter of fact, the case does not even disclose
whether Johnston would have replied to the message if it had
been received by him. The opinion, however, goes on to say
that "The rule is well settled in *Akard's case* (Texas), and
we adopt it. It is that a telegraph company is not to be held
liable in compensatory damages for its failure to forward
and deliver a message intended to relieve mental anxiety in
the mind of the sender."

*Akard's case* refers for authority to *Rowell's case,* 75
Texas, 26, and of this authority the opinion in *Sparkman's
case* further says that *"Rowell's case* seems to be a leading
case." The headnote is "Anxiety caused by the failure of a
telegraph company to deliver a message conveying informa-
tion of the improved condition of a sick relative furnishes no
ground for recovery against the company for its negligence."

*Rowell's case* was one where the plaintiff, J. H. Rowell,
had received a message saying that his wife's mother "was
worse, dangerously sick." He sent a message of inquiry,
"How is mother? If no better, Josie comes tonight. Answer
at my expense." A reply was forwarded to him, "Mother
some better. Doctor says not dangerous." The last message
the company failed to deliver, and, on action brought, the
court held as stated that the plaintiff could not recover. In
the opinion the court declares as follows: "We are of opin-
ion that the demurrer was properly sustained. The damage
here complained of was the mere continued anxiety caused
by the failure promptly to deliver the message. Some kind
of unpleasant emotion on the mind of the injured party is
probably the result of a breach of contract in most cases, but
the cases are rare in which such emotion can be held an ele-
ment of damage resulting from the breach. For injury to
the feelings in such case the courts cannot give redress. Any
other rule would result in intolerable litigation. We regard
this case as differing in principle from that of *Stewart v.*

*Tel. Co.,* in which damage for mental suffering has been allowed." This is the length and strength of the opinion in *Rowell's case.* It would seem to be an arbitrary limitation on the doctrine we are considering, not consistent with former decisions in the same jurisdiction, and the reasoning is far from satisfactory.

If a breach of contract, involving also a breach of public duty, by reason of which a telegraph company fails to relieve an oppressive and harrowing anxiety about the serious illness of a dear relative or the result of a dangerous and threatening surgical operation, cannot be made the subject matter of recovery in actions of this character, the doctrine should be abandoned.

It is not a correct premise to characterize such a grief or anxiety as "some kind of unpleasant emotion in the mind of an injured party incident to a breach of contract in most cases."

Nor is the conclusion convincing: "For injury to feelings in such cases the courts can give no redress. Any other rule would result in intolerable litigation." The limitation laid down in *Rowell's case* has been criticised by a recent writer and held to be inconsistent with other decisions on this subject. 3 Southerland Dam., section 975, and like comment is made in *Connelly v. Tel. Co.,* 100 Va., 51. The court does not think the principle laid down in *Rowell's case* is a sound one, and the opinion in *Sparkman's case,* in so far as it adopts such principle, is not approved.

There is some question if *Sparkman's case* applies to the one we are now considering in any way. This message was sent to prevent anxiety in the plaintiff's mind, and, but for the defendant's default, would have filled its mission, except perhaps for an hour and a half while the plaintiff was up the road in the expectation of meeting his wife.

There is no reversible error and the judgment is
Affirmed.

BROWN, J., dissenting: I am unable to agree with my brethren in the disposition made of this case. I am of opinion, first, that the motion to nonsuit should have been allowed, and, second, that there was error committed, and a new trial should be awarded.

1. The facts taken, in any light, do not show a case where a recovery for mental anguish should be allowed. The right to recover damages for mental anguish, not growing out of physical injury, is the settled law of this State, although the wisdom of permitting such recovery is denied by some of the ablest courts in the country. No one has ever contended that the damages are punitive in character. They are purely compensatory and are allowed for acute mental suffering. Anguish is defined to be "intense pain of body or mind" and is derived from *anguis,* a snake, referring to the writhing or twisting of the animal body. *Hancock's case,* 137 N. C., 501. We find no case where such damages are allowed for mere disappointment. This view of what constitutes that degree of mental suffering, for which actual or compensatory damages may be had, is endorsed by this court in *Hancock's case* and also in *Hunter's case,* 135 N. C., 459. The opinion in *Hunter's case* was written by *Justice Douglas,* who cannot be said to have unduly favored the telegraph companies.

The facts in this case, with which the defendant is connected, disclose nothing that should cause any feeling at all approximating *anguish* in the mind of a man of ordinary courage and self-possession. Doubtless the chief anxiety of the plaintiff arose from the fact that he had been guilty of such gross negligence as to supply his wife with only money enough to purchase a ticket from Durham to Washington, with nothing to buy bread with in case of an accident. When the plaintiff discovered at Pactolus that his wife and children were not on the train, common experience should have taught him that they had missed connection and that there were no reasonable grounds for serious apprehension. Knowing that

his wife was penniless, he naturally became alarmed. But that was his own fault. Had he supplied her with funds there would have been no occasion for great anxiety, much less anguish. There is nothing on the face of the message to put the defendant on notice that mental anguish might ensue if it was not promptly delivered, and what Mrs. Dayvis said to the operator at Weldon was not sufficient for that purpose. The "solemn issues of life and death" were not involved, nor serious illness, nor any of the usual circumstances disclosed, which indicated that great mental suffering might be caused by delay in its delivery.

Mrs. Dayvis testified that she took the wrong train at Rocky Mount and went on to Weldon and there filed the telegram set out in the record. She states, "I told the operator I had been thrown over at Weldon; had two children with me; they were sick; my husband was to meet me and would be worried unless he got the message." There is nothing here to put any one on notice that, what this court has defined mental anguish to be, would probably result from a failure to deliver the message.

The conclusion of Mrs. Dayvis, that her husband would be worried, is immaterial. Worry is not sufficient to justify a recovery. From the message and disclosure of Mrs. Dayvis, the defendant could draw only natural and reasonable inferences, which inferences would be that an ordinarily robust husband with ordinary self-control is waiting for his wife and children, and if he fails to meet them, he will take a common sense view of the matter and conclude that they are delayed somewhere en route, as is often the case. The company cannot foresee the result of its negligence due to facts not brought to its attention. It was not disclosed to the company, nor is it shown that the company was aware of the fact that Dayvis knew his children were sick or that his wife was without money; and these facts are stated by the plaintiff to be the real ground of his suffering. On cross-

examination he said he knew his wife would be uncomfortable; that he did not want his children suffering, because he knew they were sick; that he was worried because they did not come and because they did not have money enough to pay their expenses. Of these causes of his suffering, only one was brought to the attention of the company, that is, because his wife and children did not come. Could the company reasonably assume that this alone would likely cause him mental anguish? If not, then his suffering could not have been in the contemplation of the parties and the plaintiff should have been nonsuited.

On redirect examination, the plaintiff testified that his anxiety, because he feared his wife and children might be inconvenienced and uncomfortable, was the chief cause, and in fact the only cause of his suffering. It has often been held that distress, because of the discomfort of another, cannot be held the basis of an action for mental anguish. *Tel. Co. v. Stratemire,* 32 N. E., 871 (Ind.); *Tel Co. v. Cooper,* 71 Texas, 507. Any misapprehension suffered by the plaintiff, as to the meaning of the failure of his wife and children to arrive when expected, though resulting in mental anguish, cannot be made the basis of a recovery of damages. *Bowers v. Tel. Co.,* 135 N. C., 504; *McAllen v. Tel. Co.,* 70 Texas, 243.

2. There has been great trouble in ascertaining the ground on which telegraph companies may be held liable to the addressee of a telegram, not a party to the contract. Different views are advanced by courts and law writers, but this court seems to have adopted the contract theory. That being so, there must be some reasonable measure by which damages can be awarded. Doubtless having this in view, this court in *Sparkman's case* adopted the rule of the Texas Supreme Court and held that "a telegraph company is not to be held liable in compensatory damages for its failure to forward or deliver a message intended to relieve mental anxiety then

existing in the mind of the sender." In *Rowell's case,* 75
Texas, 26, the rule is applied to the sendee. It is impossible
for a jury to measure in damages the extent to which the
sendee may be injured by failure to relieve existing anxiety,
for which the company cannot be held liable. The jury can-
not well discriminate and distinguish between the anguish
existing and that which might have been relieved.

In this case, the plaintiff was already, as claimed, suffer-
ing anguish. He ascertained at Pactolus that his wife and
children were not on the train. He could not get a telegram
until he reached Washington. Had he received the telegram
what would he have learned? Only where they were. He
would still have suffered all the distressing anxiety growing
out of the knowledge that his family were in a strange town,
sick and penniless, owing to his own improvidence. How
can a jury under such circumstances measure the mental
anguish for which the defendant may be liable, and dis-
tinguish it from the existing as well as continuing anxiety
for which the defendant is not liable? The Texas court is
advanced in its views on these questions, and having adopted
its rule in *Sparkman's case,* I see no reason to overrule it.

3. It is admitted that the court erred in admitting im-
proper testimony. I do not think the court below corrected
its error. A careful reading of the attempted correction con-
tained in the charge satisfies me that the jurors were per-
mitted still to consider the mental anguish suffered by the
plaintiff, growing out of a knowledge of his family's sick and
penniless condition. This was well calculated to prejudice
the defendant, and doubtless increased the damages which
seem to be more than ample compensation for such anxiety,
as a reasonably self-contained man should have suffered
under the circumstances of this case, omitting those condi-
tions for which the defendant is admittedly not responsible.

CONNOR, J., dissenting. I concur in the dissent of Mr.
Justice Brown. I prefer to rest my dissent upon the last

ground assigned in his opinion. It is conceded that there was reversible error in the admission of testimony in regard to Mrs. Dayvis's condition, etc., while in Weldon, which entitles the defendant to a new trial, but for the instruction of His Honor. I do not think that the incompetent testimony, which was prejudicial to the defendant, was withdrawn. I concede that if incompetent testimony is withdrawn, the error in its admission is cured, just as if competent testimony is excluded if its admission could in no point of view have affected the verdict, the error is harmless. *State v. White,* 138 N. C., 704. With all deference, I do not think that His Honor withdrew or intended to withdraw the objectionable testimony. He expressly instructs the jury that they are limited to a consideration of the sufferings and mental anxiety of the husband "under these circumstances," concluding with the words "and therefore my instructions limit you to such recovery, as the husband should recover and not as to the wife." I do not think the testimony was competent for any purpose. It was predjudicial on the issue directed to the amount of damages to be awarded.

The defendant company was not responsible for the failure of Mrs. Dayvis to reach Washington on the 26th day of June or of her remaining in Weldon. The misdirection of some person connected with the railroad was the cause of her misfortune. The plaintiff's state of mind was caused by his failure to meet his wife on the cars at Pactolus. The breach of duty by the defendant did not cause this anxiety. The purpose of the wife in sending the telegram was to relieve this state of mind on the part of the husband. By reason of the failure to deliver the telegram, the state of mind continued—the mental anxiety was not relieved. A strikes B a blow causing pain. C, a physician, is called in and undertakes to relieve the pain. He negligently fails to perform his contract—he is liable in damages, not for the origin of pain, but for the negligent failure to relieve it. I concur with the

DAYVIS *v.* TELEGRAPH CO.

opinion of *Mr. Justice Hoke,* that the principle laid down in *Rowell's* and *Akard's case* and approved in *Sparkman's case,* is not sound.   I am unable to see why a breach of assumed duty to perform an act, the purpose of which is to relieve mental anguish, does not confer a right of action upon the same principle that a similar breach of duty causes mental anguish.   I wish to emphasize the necessity on the part of judges to use extreme caution in defining to juries the range within which they are permitted to move in assessing damages in this class of cases.   In all cases, the original or primal cause of the suffering must be distinguished from the suffering caused by the breach of duty by the defendant. How far, in practice, it is possible for juries to do so must cause anxious consideration to courts.   The entire subject is so fraught with obscurity and difficulty that one may well hesitate to enter upon its consideration.   I note as an indication of the progress being made that *mental anxiety* is substituted for *mental anguish.*   This case, like many others, shows gross and inexcusable negligence for which the law should give both redress and impose punishment.