HARRISON v. TELEGRAPH COMPANY.

(Filed November 21, 1906).

*Telegraphs—Mental Anguish—Damages Recoverable—Question for Jury — Relationship of Parties—Stepmother—Presumption.*

1. In an action to recover damages for delay in the delivery of a telegram, in order to enable the plaintiff to recover substantial damages, based upon his mental distress and suffering, it is necessary for him to show that the defendant could reasonably have foreseen from the face of the message that such damages would result from a breach of its contract or duty, or that it had extraneous information which should have caused it to anticipate just such a consequence from a neglect of its duty towards the plaintiff.

2. Where a telegram notified a stepmother of the death of her stepson and of the hour fixed for the funeral, the defendant's contention that the only purpose of the telegram was to notify the mother of

the hour of the interment, and that nothing else was reasonably within the contemplation of the parties, is without merit.

3. There is no presumption of mental anguish growing out of the relation of stepmother and son, but it is a fact that the plaintiff may prove, if she can, to the satisfaction of the jury.

4. In an action to recover damages for delay in the delivery of a telegram notifying the plaintiff of the death of her stepson and of the hour of the funeral, where plaintiff testified she raised deceased from a small boy, and he had been with her until just before his death; that she had no children of her own; that he treated her with affection and called her mother, and she regarded him as her own son and loved him dearly and would have attended his funeral if she had received the telegram in time; that she came on the first train after it was delivered, but that when she arrived he had been buried; that it made her very nervous and affected her so much she would never get over it: *Held*, that this evidence tends to prove something more than mere disappointment, and whether the plaintiff has really suffered mental anguish for which she was entitled to recover, was for the jury.

ACTION by Annie Harrison against Western Union Telegraph Company, heard by *Judge W. B. Councill* and a jury, at the February Term, 1906, of the Superior Court of ROWAN.

This case is reported in 136 N. C., 381, where the facts are stated. On the second trial the Court instructed the jury that, upon all the evidence, plaintiff was entitled to recover only twenty-five cents, the cost of the telegram. Plaintiff excepted, and appealed.

*R. Lee Wright* for the plaintiff.
*Tillett & Guthrie* for the defendant.

BROWN, J. In this case the only question before us relates to the measure of damages the plaintiff is entitled to recover, as the negligence of the defendant is very properly admitted. This Court has in its decisions laid down the rule governing the measure of damages and has held that such damages as were not within the contemplation of the parties cannot be

recovered. The rule is aptly stated for the Court by *Mr. Justice Walker* in *Williams v. Telegraph Co.*, 136 N. C., 82: "In order to enable him to recover substantial damages, based upon his mental distress and suffering, it is necessary for him to show that the defendant could reasonably have foreseen from the face of the message that such damages would result from a breach of its contract or duty to transmit correctly, or that it had extraneous information which should have caused it to anticipate just such a consequence from a neglect of its duty towards the plaintiff."

Not only was defendant's agent notified of the important character of the telegram, but on its face it stated the "pregnant facts of death and burial." It notified a stepmother of the death of her stepson, and of the hour fixed for the funeral. We think the learned counsel for the defendant takes a view much too restricted when he contends that the only purpose of the telegram was to notify the mother of the hour of the interment, and that nothing else was reasonably within the contemplation of the parties. The evident purpose was to notify the stricken mother at once that her son was dead, to the end that she might come without delay and have the melancholy pleasure, and perform the sacred duty, of being with his remains as long as possible before they were committed forever to the grave.

The fact that the hour fixed for the funeral is stated in the telegram is a mere incident to the general purpose for which the telegram was evidently sent. It was most natural that the plaintiff should desire to know the hour when the burial rites would be performed, but not at all in accord with the promptings of the heart of the average woman that she should be content to put off coming until the last moment. The plaintiff testified she would have come by the first train had she received the telegram when it should, with due diligence, have been delivered to her.

There is no presumption of mental anguish growing out of the relation of stepmother and son, but under our decisions it is a fact the plaintiff may prove, if she can, to the satisfaction of the jury, for the state of the mind is as much susceptible of proof as the condition of the stomach.

The plaintiff's testimony, if believed, tends to prove something more than mere disappointment. She says: "I raised the deceased from the time he was a small boy and he had been with me from then until just before his death. I have no children of my own. He called me mother. I addressed him as son. He was kind to me and treated me with kindness and affection. I regarded him as my own son. I loved him and loved him dearly. I would have come to Salisbury if I had received the message in time. I did come on the first train after it was delivered to me. When I arrived he had been buried. I did not get to Salisbury in time to attend the funeral. It made me very nervous and affected me so that I can never get over it."

We think the cause should be submitted to the jury under proper instructions, to the end that if they are satisfied the plaintiff has really suffered mental anguish, as distinguished from mere disappointment, they may award her such reasonable sum only as will in a measure compensate her for the injury done by the defendant's negligence.

Partial New Trial.

CLARK, C. J., concurring: · The doctrine of damages for mental anguish as the probable result to be anticipated from the failure to deliver messages concerning death or illness is not only imbedded in our decisions, but it was adopted and has been reiterated after the fullest consideration and upon what seemed and still seem to us the soundest principles of justice and public policy as well. Inasmuch as the representatives of the telegraph company continue to question the

correctness of these decisions, it may be well to again notice their principal arguments, which are:

(1) That some other courts have not held the telegraph company liable for such damages. If there is any force in this argument, it is countervailed by the fact that the courts in about an equal number of States have sustained the doctrine. The courts maintaining each side of the question are summed up by *Mr. Justice Douglas* in *Green v. Telegraph Co.,* 136 N. C., 504, 505; also see *Bryan v. Telegraph Co.,* 133 N. C., 608, and Watson Pers. Inj., sec. 450.

(2) It has been contended that damages for mental anguish should not be allowed because there can be no exact standard of measurement. But that is true in most instances in which damages of any kind are sought, especially where damages are sought for wrongful death or physical suffering. Damages for mental anguish are as old as the law. They have been allowed in all courts where they are accompanied by physical suffering, and damages for physical suffering are as difficult to admeasure as those for mental suffering. When the latter alone are sought to be recovered they cannot be more difficult to measure than when both mental and physical suffering are to be measured—a double uncertainty.

Besides, in very many instances damages for mental suffering unaccompanied by physical suffering have long been allowed in all courts, as in actions for breach of promise of marriage, seduction, libel, slander, malicious arrest, false imprisonment, wrongfully putting a passenger off the train, and other instances cited, with authorities. *Young v. Telegraph Co.,* 107 N. C., 384. To say that most of the instances in which damages have been allowed for mental anguish unaccompanied by physical injury have been actions of torts, not actions based on breach of contract, is merely to allege a technical distinction without any reason for a difference. There are many torts in which no mental sufferings should be allowed as an element of damages, and many actions *ex con-*

*tractu* where they should be allowed. The test is not whether the actions under our former practice were *ex delicto* or *ex contractu,* but the common-sense ground, whether in each case the mental suffering is the natural and probable consequence of the breach of contract or tort. Croswell Elec., sec. 649, puts this clearly: "As damages are allowed for pecuniary loss when the subject-matter of the telegram is a pecuniary transaction, so damages should be allowed for injury to the feelings when the subject-matter of the telegram is a transaction involving feelings. Thus messages which on their face show that they relate to sickness or death of relatives, give direct information to the telegraph company of the nature of the damages which may be suffered through its negligence."

(3) The third ground usually urged in behalf of a defendant telegraph company is the increased litigation; but as there can be no recovery unless the company has been negligent, it is entirely in the power of the defendant to relieve the courts of the labor, and itself of the expense of the threatened additional litigation, by faithfully discharging the duty it undertakes, by virtue of the public franchise it enjoys, of delivering promptly and faithfully the messages entrusted to it and which it is paid to transmit. A failure to do so "is not a mere breach of contract, but a failure to perform a public duty which rests upon it as a servant of the people." *Reese v. Telegraph Co.,* 123 Ind., 294.

As was said in *Cashion v. Telegraph Co.,* 123 N. C., 272: "A *quasi*-public corporation, exercising ordinary powers and receiving enormous profits solely in consideration of the performance of its public duties, cannot be permitted to neglect or evade those duties with practical impunity. To allow it to cancel all liability for a negligence that may have wrung the heart-strings of the citizen, for whose service it was created, by refunding the twenty-five cents which it had received but never earned, would destroy all sense of responsibility." It shocks the moral sense of mankind.

In all countries but this, the telegraph is an integral part of the post-office department (charging much lower rates than here), and the direct exercise of public opinion compels efficient service, as in our postal service. But, here, notwithstanding the Act of Congress in 1869 giving the Government the option to take charge at any time of the telegraph service, and the recommendation of several Postmasters General that this be done, the telegraph service, whose efficiency is a matter of the utmost importance to the public, remains under private ownership, and public opinion is no factor in securing efficient or removing inefficient servants.

The only remedy for a citizen wronged by delayed or undelivered messages is damages at the hands of a jury for injuries caused by such negligence. So far from removing the liability for negligence in transmitting messages concerning death or illness, the public judgment and sense of justice have been always exercised, when exercised at all, by legislation reversing previous decisions of the courts which had held telegraph companies not liable for mental anguish, caused by their negligence in such cases, as in South Carolina, Arkansas, Virginia, and other States. *Meadows v. Telegraph Co.,* 132 N. C., 44.

Our stand has been taken not hastily and unadvisedly nor been adhered to by mere persistence, but has been founded upon justice and the "reason of the thing," as it has seemed to us.