ALINE ELLISON v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 10 September, 1913.)

1. Telegraphs and Telephones — Delay in Message — Trials — Presumptions.

Where an unusual delay in the delivery of a telegram by a telegraph company is shown, the burden of proof is on the company to account for the delay; and a presumption of negligence is raised in the absence of sufficient or satisfactory explanation.

2. Telegraphs and Telephones—Office Hours—Trials—Rebuttal Evidence.

Where in an action to recover. damages against a telegraph company for a negligent delay in the delivery of a death message, the defendant seeks to excuse itself for an unusual delay in delivery by showing that it was occasioned by the observance of reasonable office hours, and, to sustain this defense, its agent testifies that he repeatedly called the terminal office and failed to get any response, and there was testimony that both agents were in their respective offices at the time, the testimony of the agent is not conclusive upon the jury, and it is for them to find, upon all the facts and circumstances, whether the agent attempted to transmit the message as testified by him, and the failure of the defendant to introduce the terminal operator in corroboration is a circumstance which the jury may consider upon the question.

3. Telegraphs and Telephones—Mental Anguish—Measure of Damages.

In this action to recover damages of a telegraph company for negligently delaying the transmission and delivery of a death message, it is held that the damages were properly confined by the trial court to the mental anguish consequently suffered by the plaintiff after the time of delivery of the message.

4. Telegraphs and Telephones—Death Message—Notice of Importance.

Where a telegraph company has received a message for transmission and delivery, announcing a death, the character of the message is sufficient to inform the defendant of its great importance, and that mental anguish would probably result from its negligence in failing to transmit it with reasonable promptness.

5. Telegraphs and Telephones — Mental Anguish — Relationship— Presumptions—Evidence.

While no presumption of mental anguish is raised from the negligence of a telegraph company in the transmission or delivery of a message announcing a death to one not related by blood to the deceased, yet such may be shown and damages recovered by the plaintiff, as, in this case, that she had been taken by the deceased into her family at a tender age, and regarded as a daughter by her, and that she actually suffered mental anguish.

6. Telegraphs and Telephones—Charges Prepaid—Waiver.

Where the agent of a telegraph company does not require the prepayment of the charges for the transmission or delivery of a telegram, but accepts it with charges to be collected at destination, it is a waiver by the company of its right to demand its charges in advance, and does not bar a recovery in a suit to recover damages for the negligence of the defendant in the failure to perform its duty respecting it.

7. Telegraphs and Telephones—Office Hours—Acceptance of Message—Waiver.

When the agent of a telegraph company receives a message for transmission and delivery after its office has closed for the day, it is a waiver by the company of its right to the observance of reasonable hours there; and should the company fail to transmit the message to the terminal office for the reason that the office was closed there also, it is his duty to notify the defendant thereof, and his negligent failure to do so is actionable, if the proximate cause of the injury.

8. Telegraphs and Telephones—Joint Offices—Sufficient Employees —Negligence.

It is the duty of a telegraph company to have a sufficient number of employees to discharge properly the duties it contracts to do, and it is no defense to an action to recover damages for its negligent failure to transmit and deliver a message it had accepted for that purpose, that the offices handling the message

were joint offices with the railroad company, and its employees there were engaged, at the time, in their duties to the railroad company.

9. **Telegraphs and Telephones—Trials—Office Hours—Messages—Conditional Acceptance—Questions for Jury.**

It is for the jury to decide, upon conflicting evidence, whether the agent of a telegraph company accepted conditionally, after office hours, a message for transmission, when that defense is relied on in an action to recover damages for the defendant's negligence in its transmission and delivery.

10. **Telegraphs and Telephones—Death Message—Measure of Damages—Grief—Mental Anguish.**

In this action to recover damages for mental anguish for the alleged negligent delay in the transmission and delivery by the telegraph company of a message announcing a death, the charge of the court that the jury should distinguish between mental anguish and mere grief and regret at the death of the deceased is approved.

11. **Telegraphs and Telephones—Agreement by Sender and Sendee —Evidence Corroborative.**

Where damages for mental anguish are sought in an action against a telegraph company for its alleged negligence in the transmission and delivery of a message announcing a death, it is competent, to sustain the plaintiff's evidence that she would have gone on the next train to the place where the body of deceased was then lying, to show a previous arrangement and understanding between the plaintiff and the sender of the message that the latter would notify the former should the condition of the subject of the message become worse.

12. **Trials—Evidence—Instructions—Harmless Error.**

The erroneous admission of evidence on the trial in this case was cured by the charge of the court.

Appeal by defendant from *Long, J.*, at Spring Term, 1913, of Washington.

This and the case of *Harrison v. Telegraph Co.*, involving practically the same questions and arising out of the same transaction, were consolidated in this Court and argued together.

There was evidence for the plaintiffs, Aline Ellison and Annie Harrison, that they were adopted by Sue Wright as her

daughters, and reared and educated by her, Annie being her niece and Aline her husband's niece. They lived in her home from a very tender age—3 and 7 years respectively—and were treated as her children and lived there as sisters. In January, 1911, Sue Wright became very ill, and Aline went from her home in Jamesville to her foster mother's home in Plymouth to see her. As her condition was improved on 25 January, 1911, Aline returned to her home in the afternoon of that day, and arrived at Plymouth about 4:30 o'clock the same day, the two places being only 15 miles apart. Shortly after she left, Sue Wright grew worse, and died about 5 o'clock. A little after .5 o'clock P. M. Annie Harrison asked Bettie Ellis, wife of Henry Ellis, to go to the defendant's office and send this message to Aline Ellison: "Sue Wright is dead. Come on the night train." Bettie Ellis asked her husband, who was employed at the railroad station, to give the message to the operator, who was also agent of the railroad company, and he did so at once. This was about 5:30 P. M. The message was not sent that evening, and not until after 10 o'clock the next morning, and was not received by Aline Ellison until 12 o'clock, at the time she heard the mill whistle blow for that hour. She left by the first train, but did not reach Plymouth until 4:30 P. M. If the message had been sent when it was received by the operator, on that afternoon, she would have received it in time to have taken the 7 o'clock P. M. train, and would have reached Plymouth at 7:30 P. M. on 25 January, and she would have taken that train if she had received the message in time. There was an understanding and arrangement between Annie and Aline that the former would wire the latter if their foster mother's condition grew worse, and that Aline would come to Plymouth, but there was no evidence that this was known to the defendant's operator, except such notice of it as he could derive from the message. The agent knew that Annie Harrison lived with Sue Wright.

The agent, J. A. Griffin, testified that he accepted the message after office hours, and promised to send it as a matter of accommodation if he found that it could be sent that evening,

but that the office at Plymouth closed at 6 o'clock P. M., and he might not be able to get an answer from the operator, though he would try to do so. He tried the wires and the telephone connecting the two places, but failed to get any response. The next morning he told Henry Ellis that he would destroy that message and send a new one, which he did, it being the one received by Aline Ellison at 12 o'clock the next day. He was both agent of the railroad company and operator of the telegraph company, but as operator he was not required to be in his office after 6 o'clock P. M., though as agent of the railroad company he was required to be in his office until 7:30 o'clock P. M., when the train arrived from Plymouth, and the agent of the railroad company at Plymouth, who was also telegraph operator, was required to be in his office until 7 o'clock P. M., when the train from Rocky Mount leaves Plymouth for Jamesville. J. A. Griffin denied that he knew where Annie Harrison lived. This witness was not corroborated by Henry Ellis, though the latter did not positively contradict him, but merely stated that he did not recollect that the transaction was as related by the operator. The railroad and telegraph offices were the same.

The defendant read in evidence the seventh section of the Harrison complaint, in which it is alleged that the plaintiff sent the message after 4 o'clock P. M. on 25 January, and told the defendant's agent of the facts and agreement between her and Aline Ellison, and requested the agent to send the message to her at Jamesville, notifying her of the death of Sue Wright, and that she paid the toll for the same. But this is not important, as the case is viewed by the Court.

It is stated in the record, "that the court charged the jury fully on the law of the case, and no exception was taken to the charge." At defendant's request, the court gave the following instructions:

"1. The plaintiff is not entitled to recover any damages because of any delay in getting the coffin, or casket, from Jamesville, and the jury will not consider this in making up their verdict on the second issue.

"2. The plaintiff cannot recover any damages because of the offensive condition of the corpse at or before the burial; and the jury will not consider this in making up their verdict as to damages.

"3. There is no evidence that the defendant had any notice of any arrangement between plaintiffs that Aline Ellison should furnish coffin, and no damages can be given by the jury on account of that.

"4. Henry Ellis, in having the message prepared and offered for transmission, if you find he did so, was the agent of the plaintiff, and not of the defendant, and defendant cannot be held responsible because of any damage or hurt suffered by his negligence, if you find he was negligent.

"5. The jury can give no damages by way of punishment to the defendant."

The defendant, also in writing, further requested the court to charge the jury as follows:

"6. Upon all the evidence introduced, the jury should answer the issues in favor of defendant."

This instruction the court declined to give, and defendant excepted.

There was a verdict for the plaintiff in each case, and judgment having been entered thereon, defendant appealed.

*Winston & Matthews for plaintiff.*
*Pruden & Pruden and S. B. Shepherd for defendant.*

WALKER, J., after stating the case: It appears that there was sufficient evidence of negligence on the part of the defendant in failing to send the message on the afternoon of 25 January. It was shown that both agents were in their offices until 7 o'clock P. M., and while the operator at Plymouth testified that he called the office at Jamesville and failed to get any response, this was not conclusive upon the jury, and they could find upon all the facts and circumstances that no effort was made to send the message. It is a suspicious circumstance, which they might consider, that the agent at Jamesville was not called by the defendant to corroborate the Plymouth opera-

tor. The· burden was upon the defendant to account for the
delay, ·after the receipt of the message for transmission was
shown. It was solely within its power to do so, and there must
be a presumption of negligence raised by so long a delay, in
the absence of any. sufficient or satisfactory explanation. *Hoag-
lin v. Telegraph Co.,* 161 N. C., 390. It was held in *Sherrill v.
Telegraph Co.,* 116 N. C., 655, that, "When the plaintiff shows
the delivery of a message to the telegraph company, with the
charges prepaid (and it would have been the same if the de-
fendant had accepted the message with charges to be collected),
and the failure to deliver the message, a *prima facie* case was
made out, and the burden rested on the defendant to show mat-
ter to excuse its failure," citing Thompson on Electricity, sec.
274, and cases; *Bartlett v. Telegraph Co.,* 16 Am. St. Rep.,
447; *Pearsall v. Telegraph Co.,* 21 Am. Rep., 662.

It is not necessary that we should discuss the evidence, as
there was plainly enough to satisfy the jury, if they accepted
it as true, that the defendant had negligently delayed to send
the message, and that this prevented the plaintiff, Aline Elli-
son, from leaving on the earlier train.

The court properly confined the assessment of damages to
mental anguish suffered after the message was actually deliv-
ered to her. There was affirmative evidence that mental ·an-
guish had been caused to both plaintiffs by the· negligence of
the defendant.

In *Williams v. Telegraph Co.,* 143 N. C., 147, we stated the
rule to be that there can be no recovery of damages for mental
suffering in such· cases, ·unless it is shown "that the defendant
could reasonably have foreseen from the face of the message
that such damages would result from a breach of its contract
or duty to transmit correctly, or that it had extraneous infor-
mation which should have caused it to anticipate just such a
consequence from a neglect of its duty towards the plaintiff."

The message in this case was of a character sufficient to in-
form the defendant of its great importance, and that mental
anguish would probably result from its negligence in failing to
transmit it with reasonable promptness. "It has repeatedly

been decided by this Court, in cases where the relationship of the parties was not disclosed and the special purport of the message could not possibly have been understood, that it was not necessary for the company to know the relation between the sender and sendee from the terms of the message, or to know anything more than that the message is one of importance, and that this should always be inferred from the fact that it relates to the illness or death of a person. When this is the case, it is sufficient to put the company on notice that a failure to deliver will result in mental suffering, for which damages may be recovered. *Lyne v. Telegraph Co.,* 123 N. C., 129; *Sherrill v. Telegraph Co.,* 109 N. C., 527; *Hendricks v. Telegraph Co.,* 126 N. C., 310." We further said in the *Bright* case: "The law does not regard so much the technical relation between the parties, or their legal status in respect to each other, as it does the actual relation that exists and the state of feeling between them. It does not raise any presumption of mental anguish when there is no relation by blood, but if mental suffering does actually result from the failure to deliver a message where there is only affinity between the parties, it may be shown and damages recovered." But here, as we have shown, there was actual proof of mental anguish, and the case was submitted to the jury upon that proof. Not only is the *Bright case* an authority sustaining the validity of the rulings in regard to mental anguish, but *Harrison v. Telegraph Co.,* 143 N. C., 147, is directly in point, and there we said: "There is no presumption of mental anguish growing out of the relation of stepmother and son; but under our decisions it is a fact the plaintiff may prove, if she can, to the satisfaction of the jury, for the state of the mind is as much susceptible of proof as the condition of the stomach." See, also, *Cashion v. Telegraph Co.,* 123 N. C., 267. In our case there was blood relationship between the plaintiff Annie Harrison and the deceased, but none between the latter and Aline Ellison, and if the relation the parties actually sustained did not raise any presumption of mental anguish, the proof supplied its place.

We have seen in *Sherrill v. Telegraph Co., supra,* cited already for another purpose, that the prepayment of the charge

for sending the message is not a condition precedent to the right of recovery. The agent could have demanded payment of the toll in advance, but not having done so, and electing to trust the sendee for the payment of it, the defendant cannot now avail itself of his failure to do so as a defense to the action.

The right to prepayment was clearly waived. *Miller v. Telegraph Co.*, 159 N. C., 502.

The defense that the message was not tendered to the defendant's agent during office hours is equally untenable. The agent received it and undertook, and actually attempted, as he testified, to send it over the wires and by telephone. It did not occur to him, at the time he was doing so, that the office hours had closed and he was not bound to transmit the message. If the provision as to office hours was available to defendant, under the circumstances of this case, it was waived by the conduct of its agent. *Bright v. Telegraph Co., supra; Hood v. Telegraph Co.*, 135 N. C., 622; *Carter v. Telegraph Co.*, 141 N. C., 374. We held in *Carter's case, supra:* "Where a message on its face appears to be urgent, the fact that it is offered for transmission after office hours will be no defense to the company if the agent accepted it without reserve," or, in other words, without insisting on the exemption from the service at the time. And in the *Suttle case* it was said: "When the agent of a telegraph company receives a message for transmission, and undertakes with the sender to deliver it at a time not within its reasonable office hours at its destination, the benefit of the office hours is waived."

If the agent was not able to transmit the message, it was his plain duty, under the law, as we have so often declared it, to notify the sender, Annie Harrison, of the fact, so that she could have taken steps to communicate to her foster sister in some other way. Its failure to do so was evidence of negligence. *Hendricks v. Telegraph Co.*, 126 N. C., 311; *Hood v. Telegraph Co.*, 135 N. C., 622; *Cogdell v. Telegraph Co., ibid.*, 431; *Woods v. Telegraph Co.*, 148 N. C., 61; *Hoaglin v. Telegraph Co.*, 161 N. C., 395.

It was no excuse for the delay in sending the message that its operator was also agent of the railroad company and had other

duties to perform for it. If the defendant employs an agent on joint account with the railroad company, it must abide the consequences of a conflict of duty upon the part of the agent. The contract of the telegraph company is for prompt delivery. It is no defense that its agent had other duties to attend to as agent for another company, any more than it would be an excuse that it had so much business of its own that one agent or the messengers it had could not promptly and properly handle it. In both cases the defendant is negligent if it does not have sufficient employees to discharge properly the duty it contracts to do and is chartered and paid to do. *Kernodle v. Telegraph Co.,* 141 N. C., 438; *Mott v. Telegraph Co.,* 142 N. C., 532; *Carter v. Telegraph Co., supra; Dowdy v. Telegraph Co.,* 124 N. C., 522.

We cannot assent to the position that there was no evidence of the agent's acceptance of the message for transmission— even his unconditional acceptance of it for that purpose. It was for the jury to settle any conflict in the evidence, and they have done so in this instance favorably to the plaintiffs. Nor can we sustain the motion for nonsuit, for there was ample evidence, if found to be true, upon which to base the verdict.

The court carefully distinguished, in its charge, between mental anguish and mere grief or regret at the death of plaintiffs' relative and foster mother, and its instructions are fully supported, in this respect, by *Davis v. Telegraph Co.,* 139 N. C., 83, and *Hancock v. Telegraph Co.,* 137 N. C., 497, cases relied on by the defendant.

The evidence as to the ability of Annie Harrison to purchase a coffin, and all the testimony on that subject, if it was erroneously admitted, was fully eliminated by the court in its charge, and the error, if any, was cured.

It was competent to show the arrangement between Annie Harrison and Aline Ellison before the latter left Plymouth, that she should be notified by wire if Sue Wright should become worse, not as charging defendant with any knowledge of it, for there was no such evidence, but as tending to show that Aline Ellison would have come to Plymouth on the 25th of January if she had received the message.

The charge is not in the record, and we must presume, in the absence of it, that it correctly stated the law.

Upon a review of the entire case and a careful consideration of the several exceptions, we have not 'been able to discover any error in the trial.