These actions were brought, one by Ovey J. Betts and the other by Raymond Betts, against the defendant, to recover damages for the negligent failure to deliver a telegram in the following words: *Page 113 To OVEY J. BETTS, Technical School, Rogersville, Tenn.
Clifton died suddenly this morning. Funeral tomorrow afternoon. Have written. (Signed) RAYMOND.
The message was delivered to defendant's operator at Raleigh, (77) N.C. on Sunday, 23 June, 1912, at 4:15 p.m., and was transmitted at 4:19 p. m. The operator promised to "get it through." It was received at Rogersville, but was never delivered. The addressee accidentally read in a newspaper, about 12 o'clock m. on the following Tuesday (25 June, 1912), an article which caused him to think that his brother, Clifton Betts, had been killed by his younger brother. He then wired by the Postal Telegraph Company, asking for information at once. He was answered by the same line, immediately: "Clifton died suddenly. Come at once," to which he replied by same line: "Will come home at once." The entire time consumed in the transmission and delivery of these three messages was about two hours, and Ovey Betts wired from Rogersville, the place to which the original telegram announcing Clifton's death was addressed. It also appears that he was at the Technical School, near Rogersville, at the time this message was received, and it could have been properly delivered to him by the exercise of proper care and diligence. The jury so found. The two cases were consolidated and tried together, the jury returning the following verdict:
"1. Was the defendant guilty of negligent delay in the transmission or delivery of the message sued on, as alleged in the complaint? Answer: Yes.
"2. What damages, if any, is the plaintiff Ovey J. Betts entitled to recover? Answer: Five hundred dollars.
"3. What damages, if any, is the plaintiff Raymond Betts entitled to recover? Answer: Two hundred and fifty dollars."
On 25 June, 1912, the Western Union Telegraph Company's operator at Rogersville sent a service message, stating that Ovey J. Betts could not be found at the school, and asking for a better address. The operator at Raleigh notified Raymond Betts of this message on the night of the said Tuesday, and this was the only notice he had received that his first message to his brother, Ovey J. Betts, announcing the death of Clifton Betts, had not been delivered. There is a telephone line from Rogersville to the Technical School, where Ovey J. Betts was living at the time the first message was sent, by which telegrams were customarily transmitted to the school.
Ovey J. Betts testified that he would have left Rogersville for his old home at once, to attend the funeral of his brother, Clifton Betts, had he received the first message, and would have arrived at Raleigh, according to the railroad schedule, at 7:30 p. m. on Wednesday; and Raymond Betts testified that he would have postponed the funeral until his arrival. *Page 114 
It appears that when Ovey J. Betts was informed that his brother, Clifton Betts, had been killed by his younger brother, Levern Betts, as it turned out, accidentally, he immediately wired, "Will come at (78) once," and left Rogersville by conveyance for Morristown, Tenn., where he caught the first train out for Raleigh. This was on Tuesday, and he arrived at Raleigh Wednesday, 26 June, 1912. If the first message had been delivered promptly he could not have reached Raleigh in time for the funeral, unless the latter had been postponed. The train arriving at Raleigh Monday night, 24 June, 1912, was three hours late. The court rendered judgment according to the verdict, and defendant appealed.
There was evidence that Ovey J. Betts had suffered mental anguish, and we think there can be no serious question raised on this branch of the case. There was testimony from which the jury could reasonably have inferred that Ovey J. Betts, if he had received the message sent by defendant's line, would have left at once for home and notified his brother, or some relative there, of his coming; and as his brother, Raymond Betts, would have postponed the funeral, he would have had the consolation of attending it, which was lost by the defendant's negligence. It seems that Clifton was his favorite brother, and the jury might well have found that he suffered mental anguish, as he was deprived of the privilege of paying this tribute to his memory by taking part in these last sad rites. As to Raymond Betts, we are also of the opinion that there is evidence from which the jury may reasonably have drawn the conclusion that he had endured mental anguish, being deprived of the presence, society, and consolation of his brother at the funeral, and not knowing why his message was unanswered.
Discussing a similar question in Bright v. Telegraph Co., 132 N.C. 317, this Court said: "A woman suddenly bereft of her husband, and who has no father or other relative or friend to whom she can turn in her distress, except the uncle of her husband, might well call upon him for consolation and assistance, especially when, as is abundantly shown by the evidence in this case, he was her husband's nearest living relative and had raised and educated him and was `devoted to her husband and herself,' and stood towards them in the place of a parent. She had every right to expect that as soon as the sad news of the death of her husband had reached him, he would come at once to her and give her that comfort, consolation, and assistance which she sorely needed. If he was not her father, he entertained for her all of the tender regard and affection *Page 115 
of a parent, and was as much interested in her welfare as if he had been her father, and she could therefore reasonably expect that he would do under the circumstances precisely what her father would have done if he had been living." And to the same general effect is Cashion v.Telegraph Co., 123 N.C. 267: "We do not mean to say that damages (79) for mental anguish may not be recovered for the absence of a mere friend, if it actually results; but it is not presumed. The need of a friend may cause real anguish to a helpless widow, left alone among strangers with an infant child and the dead body of her husband. In the present case the plaintiff seems to have received the full measure of Christian charity from a generous community, but it may be that she did not expect it, and looked alone to her brother-in-law, whose absence she so keenly felt. If so, she may prove it." As substantially said by JusticeBrown in Harrison v. Telegraph Co., 143 N.C. 147, the testimony in this case, if believed, tended to prove something more than mere disappointment and should be submitted to the jury, that they may find whether or not mental anguish was really suffered.
But defendant earnestly contends that the face of the message furnished no notice to the company that mental anguish would result. We need not pause here to consider the distinction between actions in tort and those in contract, with a view of determining what damages may be recoverable. Pennv. Telegraph Co., 159 N.C. 306. Numerous decisions of this Court are to the effect that the company must be informed of the nature of the message, either by its words or by facts brought to its attention extraneously.Williams v. Telegraph Co., 136 N.C. 82; Harrison v. Telegraph Co.,143 N.C. 147; Suttle v. Telegraph Co., 148 N.C. 480. But we have also held in as many cases that the message itself may be sufficient to impart the requisite knowledge, and this is so when its great importance is disclosed by the fact that it relates to the illness or death of a person. "When this is the case (as said in Bright v. Telegraph Co.,supra) it is sufficient to put the company on notice that a failure to deliver will result in mental suffering, for which damages may be recovered," citing Lyne v. Telegraph Co., 123 N.C. 129; Sherrill v.Telegraph Co., 109 N.C. 527; Hendricks v. TelegraphCo., 126 N.C. 310, to which may be added Hunter v. TelegraphCo., 135 N.C. 458, where the very question is carefully and elaborately considered by Justice Douglas, with the citation of many authorities; and there are several cases of more recent date to be found in our reports. SeeEllison v. Telegraph Co., 163 N.C. 5.
The company will not be permitted to close its mind to the knowledge of significant facts which are apparent on the face of the message, or to disregard its plain import; and if it does so, its fault will not be chargeable to the plaintiff, so as to bar his right to damages. It must see and *Page 116 
understand what is obvious to all, that mental anguish will result from delay in handling such a message. These messages are sent to avoid the very thing that has occurred here, and which every intelligent man, mindful of his just obligations to others, should have known would (80) occur if he failed in his plain duty to be reasonably prompt and diligent. If this message had been properly forwarded, it would have accomplished its intended mission, but defendant's default has prevented its consummation. We so said in Suttle v. Telegraph Co.,148 N.C. 480, and Dayvis v. Telegraph Co., 139 N.C. 79.
The defendant further insisted that it was not required to transmit the message from Rogersville to the Technical School over the telephone, but only to the end of its line; but there is evidence which warranted the jury in finding that it undertook to do so. The operator promised "to send it through," and it was addressed to Ovey J. Betts, at the Technical School, via Rogersville. It was also the custom to send messages in that way.Barnes v. Telegraph Co., 156 N.C. 150. Besides, defendant cannot take advantage of this point, because it utterly failed to notify the sender, with reasonable promptness, that the message had not been delivered, or to demand any pay for the supposed extra service. Hoaglin v. Telegraph Co.,161 N.C. 390. That case was much like this one. It was there held that defendant's failure to give such notice was evidence of negligence, and further it was said to be well settled "that where a telegraph company receives a message for delivery and fails to deliver it with reasonable diligence, it becomes prima facie liable, and that the burden rests upon it of alleging and proving such facts as it relies upon to excuse its failure," citing Hendricks v. Telegraph Co., 126 N.C. 304; Cogdell v.Telegraph Co., 135 N.C. 431, and other cases. Defendant has not discharged itself of this burden, and the prima facie case practically stands unchallenged, or, at least, unimpaired.
It is further urged that Ovey J. Betts was notified too late for him to attend the funeral; but we have disposed of this contention in discussing other matters. The funeral would have been delayed if defendant had performed its duty, and there would have been no mental anguish. Defendant argues that the words in the message, "Have written," show that Ovey was not expected to come, and therefore no harm was done, citing Gainey v.Telegraph Co., 136 N.C. 447; but that case bears no resemblance to this one. Those words were evidently inserted for the purpose of giving Ovey Betts more fully the particulars of the death than could be done in a telegram, and as soon as possible, in the event that he could not come. Like words have been held not to affect the result, but the fact stated was treated as a mere incident to the general purpose for which the message was sent, and in this connection it was further said not to be at all in accord with the promptings of the human heart that the *Page 117 
average relative should be content to put off coming until the last moment.Harrison v. Telegraph Co., 143 N.C. 147. We extract this passage from the headnote: "Where a telegram notified a stepmother of the death of her stepson and of the hour fixed for the funeral, the defendant's contention that the only purpose of the telegram was to (81) notify the mother of the hour of the interment, and that nothing else was reasonably within the contemplation of the parties, is without merit."
The objection to Mr. Gatling's statement to the court of the facts inSpence v. Telegraph Co., which was decided here by a per curiam order, is not tenable. Counsel was addressing the court upon a question of law and trying to show the similarity between the facts of that case and those of this one, for the purpose of arguing, to the court, that Spence's case was an authority for the position he had taken during the trial of this case below. Counsel was acting strictly within his rights, and the cases ofHorah v. Knox, 87 N.C. 483; Harrington v. Wadesboro, 153 N.C. 437;Chadwick v. Kirkman, 159 N.C. 259, and S. v. Corpening, 157 N.C. 623, fully sustain the ruling of the Court. In those cases the counsel was reading the facts of another case to the jury for the purpose of applying the law of the case to the one in hand, and it was held proper for him to do so. If that be true, how can it be improper to read the facts to the court, though they are heard by the jury, for the same purpose? Mr. Gatling was addressing the court and not the jury.
It may be well, before concluding, to consider the testimony of Raymond Betts upon the question of his mental anguish, as additional to what has already been said in respect thereto, as the case, we think, is entirely free from error in other respects, and much stress has been laid upon this one feature of it. He testified: "Q. State to the jury how you suffered in consequence of your brother Ovey's failure to get that telegram and to be present here. A. I knew that they were favorite brothers, and knowing that my brother was locked up at the time and that I needed him here, and most everything was left up to me to look after in almost every way, the conduct of the funeral and looking after my younger brother and all, and knowing that he was the oldest brother, he would be so much help to the family. Ovey J. Betts is my oldest brother; I had charge of most of the funeral arrangements." It will be seen that the evidence as to his mental anguish is much stronger than was that of the plaintiffs in cases where the sender of the message has been allowed by this Court to recover. That the testimony of Raymond Betts, which we have quoted, was competent and tended to prove mental anguish, we think was clearly decided in Shaw v. TelegraphCo., 151 N.C. 638, where similar testimony was considered and admitted, and its probative force passed upon by the Court. *Page 118 
We have discussed the case quite fully because learned counsel of defendant, in an able argument before us, supported by a most carefully prepared brief, have zealously contested plaintiff's right to recover; but we can see no obstacle in their way. The damages were light, in (82) view of the evidence, and the negligence was gross and inexcusable. The Postal Company gave prompt and efficient service, which tends to show that defendant, under substantially the same conditions, could have done much better than it did and prevented any loss to it.
There is some discrepancy in the evidence as to whether Ovey Betts arrived in Raleigh Tuesday or Wednesday night, but we do not deem this material.
No error.
Cited: Cashwell v. Bottling Works, 174 N.C. 329 (6c); Lamm v.Shingleton, 231 N.C. 15 (2c).